**PRAIRIE CATTLE COMPANY,**
**Appellant,**

v.

**Gary FLETCHER and T. L. H. Cattle Company, a Partnership, Appellees.**

**No. 9198.**

Court of Civil Appeals of Texas, Amarillo.

Dec. 31, 1980.

Rehearing Denied Jan. 28, 1981.

850

Cox & Hurt, Joe L. Cox, Plainview, Jennings & Bookout, Tulia, for appellant.

LaFont, Tunnell, Formby, LaFont & Hamilton, Larry McEachern, Plainview, for appellees.

COUNTISS, Justice.

This is a suit under the Deceptive Trade Practices—Consumer Protection Act, sections 17.41, et seq. Tex.Bus. & Com.Code Ann. (Vernon Supp. 1980–1981).[1] We have concluded that reversible error was not preserved in the trial court; accordingly, we affirm.

In July of 1977, appellees Gary Fletcher and T. L. H. Cattle Company (hereinafter "Fletcher" and "T. L. H.") purchased approximately 480 head of cattle and placed them in a commercial feedlot owned by appellant Prairie Cattle Company (hereafter "Prairie"). The cattle were placed in Prairie's feedlot for several months of feeding, fattening, and conditioning preparatory to their sale to a commercial meat processor. Prairie was responsible for the feeding and care of the cattle and billed the cost to Fletcher and T. L. H. on a monthly basis.

The dispute in the case concerns the cost of feeding the cattle. Fletcher and a T. L. H. representative testified to the following sequence of events. Fletcher discussed the "cost of gain"[2] with a Prairie representative, Mr. Mancini, when the cattle were sent to the feedlot and was told the cost would be thirty-four and one-half cents to thirty-six and one-half cents. When Fletcher and T. L. H. were billed by Prairie for the July costs, Fletcher determined that the cost of gain was thirty-eight and one-half cents to forty-two cents. He then contacted Mancini and told him the cattle were costing more than thirty-four and one-half cents to thirty-six and one-half cents. Mancini responded, "No, they're not," and told Fletcher his method of figuring the cost of gain was erroneous.

When the August bill arrived, Fletcher determined that the cost of gain was even higher than in July, and he again contacted Mancini. Mancini again insisted that the cattle were feeding for thirty-four and one-half cents to thirty-six and one-half cents and told Fletcher that he [Fletcher] didn't know what he was doing.

The September bill indicated a cost of gain of over forty cents. Fletcher and T. L. H. then sold the cattle, earlier than originally intended, to a commercial meat processor. The purchaser left the cattle in the feedlot for several more weeks. Fletcher's exhibits indicate that the average cost of gain during the entire time the cattle were in the feedlot was approximately forty cents per pound gained per animal.

Prairie's representative, Mancini, controverted many aspects of the foregoing testimony. He specifically denied telling Fletcher that the cost of gain for the cattle would be thirty-four and one-half cents to thirty-six and one-half cents or that the cattle were feeding for that cost while they were in the lot.

Fletcher and T. L. H. filed this suit seeking damages for the difference between the actual cost of gain and the cost of gain they contend Prairie, through Mancini, told them they would incur. After stating that the suit was for damages for the commission of deceptive trade practices under the Act, and enumerating various other theories of recovery, they alleged:

> Defendant . . . also committed violations of section 17.46 of the Act, to-wit:
>
> (a) passing off cattle as feeding for 35 cents when in fact they were feeding for approximately 40 cents per pound;
>
> \*    \*    \*    \*    \*    \*
>
> (d) causing confusion and misunderstanding as to how much these pens of cattle were feeding for.

1. All references hereafter to sections 17.41, et seq., or to "the Act" refer to the Deceptive Trade Practices—Consumer Protection Act as amended in 1977. 1973 Tex.Gen.Laws, ch. 143 § 1, at 322; 1977 Tex.Gen.Laws, ch. 216, § 1, at 600; 1977 Tex.Gen.Laws, ch. 336, § 1, at 892. Numerous references will be made to the 1977 version of section 17.46 of the Act.

2. "Cost of gain" is a term of art in the cattle industry and refers to the cost of putting weight on the animal. It is usually used in the context of a "per pound" basis; thus, a statement that the cost of gain was thirty-five cents means it cost the owner of the animal thirty-five cents to add one pound to the animal's weight. The lower the cost of gain, the greater the return on the investment for the owner of the cattle.

The case was tried and submitted to the jury on the theories represented by the above-quoted allegations. Special issues one and two, and the jury's answers, are as follows:

## SPECIAL ISSUE NO. 1

Do you find from a preponderance of the evidence that agents and employees of the Prairie Cattle Company passed off these cattle in question as feeding for 34½¢ to 36½¢ when they were actually feeding for approximately 40¢ per lb.
Answer "yes" or "no"
Answer: yes

## SPECIAL ISSUE NO. 2

Do you find from a preponderance of the evidence that agents and employees of Prairie Cattle Company caused confusion or misunderstanding as to how much these pens of cattle in question were feeding for?
Answer: "They did cause" or "They did not cause"
Answer: They did cause

No issue was submitted inquiring whether the acts inquired about in issues one and two were deceptive trade practices. On the basis of the jury's answers to the foregoing and other issues, the trial court rendered judgment awarding Fletcher and T. L. H. $15,000 plus attorneys fees.[3]

■ In this court, Prairie presents three general points, asserting error by the trial court in overruling its exceptions to pleadings, its exceptions and objections to the charge and its motion for judgment notwithstanding the verdict. Fletcher and T. L. H. point out, correctly, that the points of error do not comply with Rule 418.[4] However, we are able to ascertain the specific errors asserted by Prairie in its argument. We are, therefore, required to pass on them. *Fambrough v. Wagley*, 140 Tex. 577, 169 S.W.2d 478 (1943).

Prairie presents a four-step argument. It says the two acts alleged by Fletcher and

T. L. H. and found by the jury are not per se violations under the section 17.46(b) "laundry list." Therefore, if the acts are to be treated as deceptive trade practices, they must come under the general provisions of section 17.46(a). Under that section, however, the jury must find (1) that the act occurred and (2) that it was a deceptive trade practice. Since the jury was not asked whether the acts were deceptive trade practices, Prairie contends Fletcher and T. L. H. failed to obtain a jury finding on an element essential to their recovery and thus cannot prevail.

Prairie's argument is essentially correct. As will be demonstrated in the final portion of this opinion, however, a missing element that will support the judgment of the trial court must be deemed found under Rule 279 because Prairie did not properly object to the charge.

During the dates pertinent to this case, the portions of section 17.46 applicable here read as follows:

§ 17.46. Deceptive Trade Practices Unlawful

(a) False, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

(b) The term 'false, misleading, or deceptive acts or practices' includes, but is not limited to, the following acts:

(1) passing off goods or services as those of another;

(2) causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

The Act does not define a deceptive trade practice. In *Spradling v. Williams*, 566 S.W.2d 561, 562–64 (Tex.1978), however, the Texas Supreme Court approved an instruction defining deceptive trade practices as:

Any false, misleading or deceptive acts or practices in the conduct of any trade or commerce. You are instructed that the term "false, misleading, or deceptive acts or practices" means an act or series of acts which has the capacity or tendency

---

3. The jury found total actual damages of $5,000 and the trial court trebled the damages under section 17.50 of the Act.

4. All references to rules are to the Texas Rules of Civil Procedure.

to deceive an average or ordinary person, even though that person may have been ignorant, unthinking, or credulous.

■ *Spradling v. Williams* also outlines the proper method of submitting a section 17.46 case to the jury. If the act or practice in dispute is one of those specifically listed under section 17.46(b), the jury is asked if the act or practice occurred. It is not, however, asked if the act or practice is a deceptive trade practice. If the jury finds the act or practice did in fact occur, the act or practice is a deceptive trade practice as a matter of law, because section 17.46(b) declares the practice to be unlawful.

■ If the act or practice in dispute is not specifically listed under section 17.46(b) it may still be a deceptive trade practice under section 17.46(a). In that case, however, the jury is given the definition of a deceptive trade practice, asked if the act or practice occurred and also asked if the act or practice is a deceptive trade practice. 566 S.W.2d at 563–564. Thus, whether an act or practice found under section 17.46(a) is a deceptive trade practice is a question of fact.

Appellees Fletcher and T. L. H. defend the favorable judgment by arguing that the finding by the jury that Prairie passed off the cattle as feeding for thirty-four and one-half cents to thirty-six and one-half cents when they were actually feeding for forty cents is a finding of an act or practice that is a deceptive trade practice as a matter of law under section 17.46(b)(1). They further contend that the finding that Prairie caused confusion or misunderstanding on the amount for which the cattle were feeding is a finding of an act or practice that is a deceptive trade practice as a matter of law under section 17.46(b)(2).

■ We do not agree that the acts found by the jury are section 17.46(b) violations. Section 17.46(b)(1) pertains to the passing off of goods or services as those of another. It is primarily concerned with deception in the identity of a good or service, as when a different brand of good or service is substituted for the one requested by the consumer. Bragg, Texas Consumer Litigation § 3.06 (1978). The act found by the jury in special issue number one could reasonably be related to deception in the cost of a service but it is not deception in the identity of the service.

■ Section 17.46(b)(2) pertains to the causing of confusion or misunderstanding as to the source, sponsorship, approval or certification of goods or services. It is primarily concerned with deception in the origin or endorsement of a good or service. Texas Consumer Litigation, *id.*, at § 3.07. The act found by the jury in special issue number two, as in special issue number one, could reasonably be related to deception in the cost of a service. It is not, however, deception in the origin or endorsement of the service.

■ The two acts found by the jury are not deceptive trade practices as a matter of law. We are satisfied, however, that they are acts of a false, misleading or deceptive nature that have the capacity to deceive an average or ordinary person. Thus, they are acts that the jury could have found to be deceptive trade practices as a matter of fact under section 17.46(a), had that issue been submitted to the jury.

■ The final inquiry, then, is whether the failure of Fletcher and T. L. H. to secure a fact finding on the second element of their causes of action, i. e., that the acts were deceptive trade practices as a matter of fact, is fatal to their recovery. We conclude that it is not because of the provisions of Rule 279.

Prairie objected to the court's charge on numerous grounds. We do not find, however, an objection to the failure to submit an issue inquiring whether the act inquired about in special issue number one is a deceptive trade practice.[5] Rule 279, as pertinent here, states:

---

5. There is an objection that could be construed as preserving error because of the failure to inquire whether the act inquired about in special issue number two was a deceptive trade practice. Since either act is sufficient to support the judgment, we will not further discuss the second act.

[W]here such ground of recovery or of defense consists of more than one issue, if one or more of the issues necessary to sustain such ground of recovery or of defense, and necessarily referable thereto, are submitted to and answered by the jury, and one or more of such issues are omitted, without such request, or objection, and there is evidence to support a finding thereon, the trial court, at the request of either party, may after notice and hearing and at any time before the judgment is rendered, make and file written findings on such omitted issue or issues in support of the judgment, but if no such written findings are made, such omitted issue or issues shall be deemed as found by the court in such manner as to support the judgment.

*See also Allen v. American National Ins. Co.*, 380 S.W.2d 604, 609 (Tex.1964).

The missing issue, inquiring whether the act inquired about in special issue number one is a deceptive trade practice, is a controlling issue that is one of a cluster of issues embodying a theory of recovery. It should have been submitted. Since no objection was made to its omission, however, and there is evidence to support a finding that the act was a deceptive trade practice, we must deem it found by the trial court "in such manner as to support the judgment" under the clear language of Rule 279.

Points of error one, two and three are overruled. The judgment of the trial court is affirmed.