**Robert Wayne REED, Appellant,**

v.

**ISRAEL NATIONAL OIL COMPANY, LTD., Appellee.**

No. 01–83–00730–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Oct. 25, 1984.

Donald G. Roberts, Kirkham & Roberts, Joe M. Kirkham, Kirkham & Roberts, J. Clifford Gunter, III, Bracewell & Patter-

son, Susan J. Brandt, Bracewell & Patterson, Houston, for appellant.

Edmund L. Cogburn, Charity O'Connell, Dow, Cogburn & Friedman, Houston, for appellee.

Before DUGGAN, DOYLE and LEVY, JJ.

## OPINION

DUGGAN, Justice.

This is an appeal from a plaintiff's judgment awarding treble damages and attorney's fees under the Texas Deceptive Trade Practices Act.

A jury awarded plaintiff, Israel National Oil Company, Ltd. ("Israel Oil"), actual damages of $72,407.70, and attorney's fees of $57,500, subject to credit if there were no appeals. The trial court trebled the actual damage award, added prejudgment interest to date of judgment, and deducted a stipulated credit in the amount of $53,-644. The total judgment against the defendant, Reed, including attorney's fees, was for $252,392.53, subject to attorney's fees credit.

The appellant asserts fourteen points of error, and the appellee brings two cross-points.

Israel Oil's pleadings initially alleged a cause of action for fraud, breach of warranty, breach of contract, and failure to pay a promissory note given by Reed in partial payment for losses resulting from used drilling pipe purchased from him. Shortly before trial, Israel Oil amended its pleadings to allege violations of the DTPA by Reed.

Reed's answer consisted of a general denial and a claim of fraudulent misrepresentation pertaining to a labor contract that he said provided the consideration for his execution of the promissory note.

The transaction upon which plaintiff's cause of action is based took place in late 1975 in Singapore, where Michael Kisch, an officer of Israel Oil, was handling the renovation of an oil rig for drilling operations in the Gulf of Suez. Kisch did a great deal of business at this time with Jack Enen &

Associates, a supply company whose president was Reed.

Reed, knowing that Kisch needed a supply of drill pipe for the rig, located and purchased a string of used pipe from Key Drilling in late December of 1975 for $2 per foot and sold it to Israel Oil for $11 per foot. Reed was acting in the transaction only in behalf of himself and Jack Enen, Jr., not Jack Enen & Associates. This pipe had been taken out of service by Key in October of 1975 and stored in Enen's Singapore yard. Key gave Reed a receipt showing that the pipe was "Class III." Reed never showed the receipt to Kisch.

Reed hired Vetco, a commercial inspection company, to inspect the pipe for Israel Oil. Vetco inspected ten joints of the pipe and submitted a report to Reed certifying that these ten joints were "Class II" pipe. On the basis of this inspection report, Reed's representations as to the class of the pipe, and a visual inspection, Kisch approved the purchase of the pipe.

During the purchase negotiations, Kisch and Reed discussed a contract to provide labor for the rig's operation. While Reed was in Israel in March of 1976 to pursue this contract, an inspection of 49 joints of the pipe in Israel revealed that it was "Class III" or "Class IV" pipe.

As a result of meetings with Kisch, and later with David Schlosberg, an attorney for Israel Oil, Reed signed two sworn statements admitting his liability for Israel Oil's losses, and a letter agreement and promissory note providing for restitution.

Reed ultimately defaulted in payment of the note and broke off communication with Israel Oil. Israel Oil then sued Reed and Jack Enen, Jr., and accepted a $53,644 settlement from Enen & Associates, which was never sued.

Appellant's first two points of error contend that the trial court erred in rendering judgment for plaintiff under the 1975 version of the Texas Deceptive Trade Practices Act because there was no evidence, or insufficient evidence, that plaintiff Israel Oil was a "consumer" under that act, and

because the finding of "consumer" was against the great weight and preponderance of the evidence.

■ The proper predicate for a legal insufficiency, or "no evidence," point of error is either a motion for instructed verdict, an objection to the submission of a vital fact issue, a motion to disregard a jury finding, a motion for judgment non obstante veredicto, or a motion for new trial that distinctly raises the "no evidence" point. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex.L.Rev. 361, 362 (1960).

Appellant presented no motion for instructed verdict. He did file a motion for judgment on the verdict, a motion for new trial, and a motion to vacate, correct or reform judgment, but in none of these motions does he distinctly raise the "no evidence" point he now urges. Likewise, appellant filed no motion for judgment non obstante veredicto.

■ Whether or not a plaintiff is a consumer is a question of law to be determined by the trial court from the evidence. If the trial court concludes that a plaintiff is not a consumer, it will not submit jury questions as to the violation of the terms of the Act. *Ridco v. Sexton*, 623 S.W.2d 792, 795 (Tex.App.—Fort Worth 1981, no writ). Since the trial court did submit jury questions as to the violation of the terms of the DTPA by Special Issues No. 1 and No. 3, it can be presumed that the trial court concluded that plaintiff was a consumer under the Act.

■ Furthermore, appellant's only objections to these two issues were (1) that the definition of the term "recklessly" in issue number 1 was erroneous, and (2) that issue number 3 did not state the basis for any legal ground of recovery because it "does not inquire as to whether the Defendant made any misstatement as to any material fact." These two objections do not reach the "no evidence" point complaining that plaintiff is not a consumer. Hence, no proper predicate was laid in the trial court

for our consideration of appellant's "no evidence" point of error.

■ In determining factual insufficiency of the evidence, or "great weight and preponderance" points, this court must consider and weigh all of the evidence, including any evidence contrary to the jury's finding on the special issues. *In Re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

The judgment entered by the trial court herein stated that "[b]ased on the findings of the jury, judgment should be rendered for plaintiff under the [DTPA] as it was prior to the 1977 amendments thereto, but after amendments thereto added in 1975."

Section 17.45(4) of the DTPA, as amended in 1975, defined a "consumer" as follows:

(4) 'Consumer' means an individual, partnership or corporation who seeks or acquires, by purchase or lease, any goods or services.

Section 17.45(1) defined "goods" as follows:

(1) 'Goods' means tangible chattels or real property purchased or leased for use.

Finally, sec. 17.45(2) of the Act defined "services" as follows:

(2) 'Services' means work, labor, or services purchased or leased for use, for other than commercial or business use, including services furnished in connection with the sale or repair of goods.

The appellant argues that the trial court's judgment was in error because: (1) the plaintiff did not plead and prove that it was a "consumer" and failed to obtain a jury finding to that effect; (2) the plaintiff purchased the pipe for commercial purposes, *i.e.*, for use in production of other goods, and therefore does not fit within the Act's definition of consumer; and, (3) the plaintiff was a "governmental entity", and therefore not a "consumer" under the 1975 version of the Act. Each of these arguments is without merit.

■ In order to maintain a private cause of action for treble damages under

sec. 17.50 of the Act, the complainant must qualify as a "consumer," as defined in sec. 17.45(4) of the 1975 version of the Act. *Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d 535, 538 (Tex.1981); *Riverside Nat'l Bank v. Lewis,* 603 S.W.2d 169, 173 (Tex.1980). The plaintiff has the burden of proof on all elements of his cause of action under the Act, including proof that he was a consumer. *Farmers and Merchants State Bank v. Ferguson,* 617 S.W.2d 918, 920 (Tex.1981). The Act does not require that a complainant use the word "consumer" to describe himself in pleading his cause of action; however, he must allege facts which show him to be a person within the statutory definition of "consumer." *First Title Co. of Corpus Christi v. Cook,* 625 S.W.2d 814, 817 (Tex.App.—Fort Worth 1981, writ dism'd); *Cameron, supra; Ridco, supra.*

Plaintiff's Fourth Amended Original Petition did not specifically allege that it was a "consumer" as defined in sec. 17.45(4) of the Act. However, it did allege the following: that defendant Reed sold plaintiff a quantity of drill pipe which Reed represented and warranted was merchantable and usable for its intended purposes; that the plaintiff relied on these representations made by the defendant and purchased the pipe; that the pipe was in fact worthless and unusable for the purpose intended; that the plaintiff suffered damages because of the defendant's false representations; that because of these false and misleading representations the defendant violated the Texas Deceptive Practices—Consumer Protection Act; and, that because of such violation of the Act, plaintiff's damages should be trebled as provided by the Act.

■ A petition is sufficient if it gives fair and adequate notice of the facts upon which the pleader bases his claim. Tex.R. Civ.P. 45 and 47. The court will look to the pleader's intendment and will uphold the pleading even if some element of a cause of action has not been specifically alleged. Every fact will be supplied that can reasonably be inferred from what is specifically stated. *Roark v. Allen,* 633 S.W.2d 804, 809 (Tex.1982); *Gulf, Colorado & Santa Fe Railway Co. v. Bliss,* 368 S.W.2d 594, 599 (Tex.1963).

■ Since plaintiff's petition specifically alleged that the defendant had violated the DTPA, it can reasonably be inferred that the plaintiff is alleging that it meets the Act's definition of "consumer." The purpose of Rules 45 and 47, Tex.R.Civ.P., is to give the opposing party sufficient information to enable him to prepare a defense. *Roark, supra,* at 810; *Murray v. O & A Express, Inc.,* 630 S.W.2d 633 (Tex.1982). An allegation in its petition that the defendant violated the DTPA is equivalent to a plea that the plaintiff is a consumer under the Act. Further, the record shows that plaintiff proved that it was a consumer under the Act. The evidence shows that the plaintiff, through its agent, purchased a quantity of drill pipe from the defendant to be used by the plaintiff on its oil rig.

In this regard, appellant contends that the plaintiff is not a "consumer" because it failed to obtain a jury finding to that effect, citing *Farmers and Merchants State Bank v. Ferguson, supra. Ferguson* is not controlling in our case and is clearly distinguishable. The supreme court in *Ferguson* held that the plaintiff failed to carry its burden to show that the "services" rendered by the defendant were for personal use and not for business use and therefore did not show he was a consumer. Our case deals with "goods" and not with "services." Under the Act, services purchased must be for a personal and not a business use to qualify their buyer as a consumer. "Goods" are not restricted by the Act as are "services." The undisputed evidence in our case clearly shows that the purchase was for "goods," as defined by sec. 17.45(1) of the Act.

Without objection, the trial court submitted special issues inquiring about a violation of the terms of the Act. If the trial court were to conclude that a plaintiff is not a consumer, it would not submit jury questions as to the violation of the Act's terms. *Ridco,* 623 S.W.2d at 795. By Spe-

cial Issue 3, the court inquired whether the purchase of the drill pipe (goods) by the plaintiff was induced by the false or misleading representations made by the defendant, and the jury answered in the affirmative. The judgment entered stated that it was rendered for the plaintiff under the DTPA based on the jury's findings.

■ Appellant likewise contends that plaintiff is not a "consumer" under the Act because it purchased the drill pipe for commercial purposes, i.e., for use in the production of other goods, citing *Ratcliff v. Trenholm* 596 S.W.2d 645 (Tex.Civ.App.—Tyler 1980 *on appeal after remand,* 636 S.W.2d 718 (Tex.App.—Dallas 1982, writ granted), *rev'd on other grounds,* 646 S.W.2d 927 (Tex.1983). We disagree. While *Ratcliff* states that "the purchase of goods ... for use in the production of other goods, is not within the contemplation of the DTPA," *Id.* at 649, the basis for the holding that the plaintiffs were not consumers under the Act was that the *Ratcliff* plaintiffs acted as merchants in the purchase and resale of the lots, and "did not acquire the lots to hold, occupy, or enjoy, nor to convert the same to their own service," and therefore occupied the status of "merchants" rather than "consumers." *Id.* Appellant cites no other decision to support his argument that goods used in production are not covered by the Act.

In *Rotello v. Ring Around Products, Inc.,* 614 S.W.2d 455 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.), it was held that the seed purchased was goods and the plaintiffs were consumers, despite the fact that the seed was to be used in a commercial farming operation. *Id.* at 460.

Appellant's final contention in points of error 1 and 2 is that the plaintiff was a "governmental entity," and therefore was not a "consumer" under the 1975 version of the Act. The DTPA's 1975 version included corporations within the definition of "consumer." However, not until 1977 was this definition amended to include a "governmental entity." Appellant contends the evidence demonstrates that plaintiff was a

"governmental entity" when this cause accrued, and because the 1975 and not the 1977 version of the Act is applicable, plaintiff is not entitled to judgment under the Act as a consumer.

■ Plaintiff's operative pleading alleged plaintiff to be a corporation organized under and by virtue of the laws of Israel, and neither defendant's amended answer nor his supplemental answer contained a sworn denial that the plaintiff was a corporation. Rule 52, Tex.R.Civ.P., states:

> An allegation that a corporation is incorporated shall be taken as true, unless denied by the affidavit of the adverse party, his agent or attorney, whether such corporation is a public or private corporation and however created.

Appellant's failure to deny under oath that Israel Oil is a corporation dispensed with the necessity that plaintiff prove that fact. *Galleria Bank v. Southwest Properties, Inc.,* 498 S.W.2d 5, 7 (Tex.Civ.App.—Houston [1st Dist.] 1973, no writ). Despite the lack of need for plaintiff to prove that it is a corporation, the evidence at trial shows that the Israel National Oil Company fits the description of a public corporation, as defined in *Miller v. Davis,* 150 S.W.2d 973, 978 (Tex.1941). As a public corporation, the Israel National Oil Company comes within the definition of "consumer" in the 1975 version of the DTPA. Appellant's points of error 1 and 2 are overruled.

Points of error 3, 4, 5, 6, 7, 8, and 10 pertain to Special Issues Nos. 3 and 7(3), upon which the trial court based its judgment for plaintiff under the DTPA. These issues read as follows:

### SPECIAL ISSUE NO. 3

Do you find, from a preponderance of the evidence, that, knowing Israel National Oil Company to be misled as to material facts concerning the quality of the drill pipe, Reed intentionally kept Israel National Oil Company misled by concealing material facts from Israel National Oil Company, thereby inducing purchase of the pipe, to the financial loss of Israel

National Oil Company, proximately caused by the purchase of the pipe? Answer: "We do" or "we do not".

WE THE JURY ANSWER: We do

### SPECIAL ISSUE NO. 7

Do you find, from a preponderance of the evidence, that with respect to the sale of the drill pipe to Israel National Oil Company Reed did one or more of the following?

Answer: "Yes" or "No" to each item:

1. Represented to Israel National Oil Company that the drill pipe was of a particular quality or class which it was not. ___ No

2. Represented to Israel National Oil Company that the drill pipe had certain uses that it did not. ___ No

3. Caused confusion or misunderstanding as to the quality of the pipe. Yes ___

The appellant contends that the court erred in rendering judgment for plaintiff under the Act because:

(1) Special Issue No. 7(3) does not conform to sec. 17.46(b)(2) of the Act;

(2) there was no jury finding sufficient to support a judgment based on an alleged violation of sec. 17.46(b)(2) or sec. 17.46(a) of the Act;

(3) there was no evidence that the defendant violated sec. 17.46(b)(2) or sec. 17.46(a) of the Act;

(4) there was insufficient evidence to hold the defendant liable under sec. 17.46(b)(2) or sec. 17.46(a) of the Act; and,

(5) Special Issue No. 3 did not inquire about matters that would support a legal theory of recovery.

Section 17.46(a) of the Texas Deceptive Trade Practices Act states that:

(a) False, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful and are subject to action by the consumer protection division under Sections 17.47, 17.58, 17.60 and 17.61 of this code.

Subsection (b)(2) of section 17.46 states:

(b) Except as provided in Subsection (d) of this section, the term "false, mis-

leading, or deceptive acts or practices" includes, but is not limited to, the following acts:

\* \* \* \* \* \*

(2) causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services.

Appellant first argues that because Special Issue 7(3) does not conform to the precise language of the Act's sec. 17.-46(b)(2), there is no jury finding to support the court's judgment as to a violation of that subsection.

■■■ The deceptive acts or practices listed in sec. 17.46(b) do not form an exclusive list. This subsection specifically states that the classification of the condemned practices "includes, but is not limited to," this list. *Spradling v. Williams,* 566 S.W.2d 561, 564 (Tex.1978). Special issue 7(3) is not in the precise language of subsection (b)(2) and is, in fact, a combination of the language contained in subsection (b)(2) and (b)(7) of 17.46.

■■■ While issues in deceptive trade practice cases for 17.46(b) violations should be submitted in terms as close as possible to those actually used in the statute, the statutory language may be altered somewhat to conform the issue to the evidence of the case. *Brown v. American Transfer & Storage Co.,* 601 S.W.2d 931, 937 (Tex. 1980).

The appellant contends that *Brown* mandated that special issues in DTPA cases conform precisely to "laundry list" items in 17.46(b). To the contrary, *Brown* held that the issues submitted in broad form were proper because they followed "closely the wording of the statute with alterations or deletions to conform the issues to the pleadings and evidence." *Brown,* 601 S.W.2d at 937.

In *Pennington v. Singleton,* 606 S.W.2d 682, (Tex.1980), the supreme court further spoke to the broad submission of special issues in DTPA cases approved in *Brown:*

Some overlap may occur as a result of broadly interpreting the listed violations in Section 17.46(b). *A broad interpretation is warranted,* however, due to human inventiveness in engaging in deceptive or misleading conduct. The legislature did not intend its express purpose of protecting consumers from false trade practices to be circumvented by those who would seek out loopholes in the Act's provisions. (Emphasis added).

606 S.W.2d at 687.

■ The appellant specifically complains of the use of the word "quality" in Special Issue 7(3) instead of the words "source, sponsorship, approval, or certification" used in 17.46(b)(2). The appellee responds that in this case the "quality" of the drill pipe was equivalent to "certification," and that confusion as to "quality" would be essentially the same thing as confusion as to "certification." The Corpus Christi Court of Civil Appeals found in the case of *Jim Walter Homes, Inc. v. Chappa,* 614 S.W.2d 838, 841 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.) that a misrepresentation of "good, substantial, workmanlike manner" of construction was a sufficient submission to allege a violation of sec. 17.46(b)(7), which states:

(7) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another

. . . . . .

Further, appellant made no objection to the wording of Special Issue 7(3) as submitted, and thereby failed to preserve error for appeal. Rule 274, Tex.R.Civ.P.

Appellant next contends that because Special Issue No. 3 does not conform to any of the "listed" violations set out in 17.46(b), and because there was no finding that any of the acts constituted a "false, misleading, or deceptive act or practice," under 17.46(a), the judgment is not supportable under the DTPA.

■ An act or practice which is not among those listed in section 17.46(b) may still be a deceptive trade practice under sec. 17.46(a), but requires a jury issue to determine as a matter of fact whether it was deceptive. *Spradling,* 566 S.W.2d at 566; *Prairie Cattle Co. v. Fletcher,* 610 S.W.2d 849, 853 (Tex.Civ.App.—Amarillo 1980, writ dism'd).

■ No issue was submitted inquiring whether the acts contained in Special Issue Number 3 were false, misleading or deceptive. However, appellant did not object to Special Issue No. 3's submission of this theory of recovery. One of appellant's objections was that

Special Issue No. 3 does not state the bases [sic] for any legal ground of recovery. And if Special Issue No. 3 were answered "We do," such could not be the legal basis for any judgment in that Special Issue No. 3 does not inquire as to whether the Defendant made any material fact, [sic] or that he knew a material fact to be misunderstood by the Plaintiff at the time of the purchase.

While special issues no longer need be submitted "separately and distinctly" (Rules 277 and 279, Tex.R.Civ.P.), objection to a charge must be made "distinctly" and "specifically." If there is a variance between pleadings and proof, the distinct variance or other defect must be stated in the objection or it is waived. Rule 274, Tex.R. Civ.P.; *Brown,* 601 S.W.2d at 938. Appellant's quoted objection fails to point out distinctly and specifically the court's omission of an issue asking whether the acts inquired about were deceptive trade practices.

■ The missing issue, asking whether the acts inquired about in Special Issue No. 3 are deceptive trade practices, is a controlling issue that is one of a cluster of issues embodying a theory of recovery. Since no distinct and specific objection was made to its omission and there was evidence to support a finding that the acts were deceptive trade practices, we must deem it found by the trial court "in such manner as to support the judgment" under the language of Rule 279. *Prairie Cattle Company,* 610 S.W.2d at 854.

 Both Special Issues 3 and 7(3) are sufficient to support the plaintiff's DTPA judgment. Special Issue No. 3 resulted in a finding of fact that the defendant intentionally kept the plaintiff misled by concealing material facts as to the drill pipe, a DTPA violation under sec. 17.46(a). Although Special Issue No. 7(3) did not precisely track the language of sec. 17.46(b)(2), it sufficiently alleged a false, misleading or deceptive act under sec. 17.46(a). Appellant likewise made no objection to the court's failure to submit an issue asking whether the act inquired about in special issue number 7(3) was a deceptive trade practice. Again, Rule 279 provides that this missing element that will support the judgment must be deemed found.

By points of error 4, 5, 7, and 8, appellant contends that there was no evidence, or insufficient evidence, that he violated sec. 17.46(b)(2) or sec. 17.46(a) of the Act, and that the judgment of the trial court was therefore in error.

 In considering "no evidence" points, this court must consider only the evidence favorable to the jury's finding and disregard all evidence or inferences to the contrary. *Goodyear Tire & Rubber Co. v. Jefferson Construction Co.*, 565 S.W.2d 916 (Tex.1978).

The appellant maintains that there was no evidence admitted during the trial, and the jury was not asked to find, that there was any confusion about the "source, sponsorship, approval, or certification of goods" so as to support a judgment based on a violation of sec. 17.46(b)(2) of the Act. He also maintains that there was no evidence or insufficient evidence to support a finding that the plaintiff had been misled, so as to support a judgment based on sec. 17.46(a) of the Act.

As with special issue number 7(3), discussed above, it did not matter that the issue was not worded in the precise language of sec. 17.46(b)(2) in order for the finding to support a DTPA judgment. The only question is whether there was any evidence or sufficient evidence in the record to show that the act listed in issue 7(3) was a false, misleading, or deceptive act.

 There is evidence in the record to show that, as found in Special Issue 7(3), appellant caused confusion or misunderstanding as to the "quality" of the pipe plaintiff purchased. When Reed purchased the pipe from Key, Key gave him a receipt that showed the pipe to be "Class III" pipe. Reed's testimony showed that he knew of this classification before he sold the pipe to the plaintiff, and that none of Israel Oil's representatives knew about the information on this receipt prior to his sale to Israel Oil. In addition, Reed knew that Israel Oil was purchasing the pipe based on the Vetco inspection report he supplied showing "Class II." This evidence is sufficient to show (1) that Reed caused confusion or misunderstanding as to the quality of the pipe, and (2) that the plaintiff was misled and relied on appellant's representations concerning its quality. The evidence is sufficient to support the judgment. *In re King's Estate, supra.* Appellant's points of error 3, 4, 5, 6, 7, 8, and 10 are overruled.

Appellant contends in his point of error 9 that the trial court erred in submitting Special Issue Number 3 because the issue constituted a comment on the weight of the evidence, in that use of the word "misled" implied to the jury that the court had concluded the plaintiff had in fact been misled. The portion of the issue about which appellant complains reads: "Do you find ... that, knowing [plaintiff] to be misled as to material facts concerning the quality of the drill pipe, Reed intentionally kept [plaintiff] misled by ...." Appellant asserts that there was no evidence or insufficient evidence to support a finding that plaintiff had been misled, or that Reed knew that plaintiff had been misled.

All of plaintiff's witnesses testified that plaintiff was misled by Reed's actions as to the class or grade of all the pipe joints. Further, Reed never told Kisch where he had gotten the pipe, or that it was Class III. Kisch testified that Reed "led him to

believe" that the pipe was Class II as indicated by the Vetco report, and that he would not have purchased it if he had known either the price Reed paid for it or that it was Class III.

■■■ While a trial court must not comment *directly* in its charge on the weight of the evidence, a charge will not be objectionable if it *incidentally* does so. Rule 277, Tex.R.Civ.P. Because the testimony outlined above was undisputed, and shows that the plaintiff was initially misled as to the quality or class of pipe, we find that the use of the term "misled" was not a direct comment by the court on the weight of the evidence, but incidental at most. Appellant's point of error 9 is overruled.

By his point of error number 11, appellant asserts that the trial court erred in rendering judgment under the DTPA because that statute by its own terms does not apply to the transaction in question. This is so, he asserts, because the evidence shows that the transaction in question did not in any way, directly or indirectly, affect the people of the State of Texas, and the mere fact that appellant was a Texas resident at the time suit was filed does not make the DTPA applicable. He cites no authority in support of this contention.

In the 1975 version of the DTPA, "trade and commerce" was defined in sec. 17.45(6) as:

[T]he advertising, offering for sale, sale, lease or distribution of any good or service ... *wherever situated,* and shall include any trade or commerce *directly or indirectly affecting the people of this state.* (Emphasis added).

Contrary to appellant's contention, the evidence shows that, at the time of his sale of the pipe to the plaintiff, Reed resided in Houston, had his base of operations in Houston, and placed the proceeds of the sale in his Houston bank account. Jack Enen, his partner in the transaction, was also a Houston resident.

■■■ The quoted definition of trade and commerce in the Act covers the sale of any good or service "wherever situated." The

fact that the pipe was situated in Singapore and sold to Israel National Oil does not make the Act inapplicable. Furthermore, most of the discussions regarding repayment of the losses sustained by Isreal Oil took place while Reed was in Houston. We find that the sale of this pipe was "trade or commerce directly or indirectly affecting the people of this state," as defined by sec. 17.45(6) of the Act. Appellant's point of error number 11 is overruled.

Appellant's point of error number 12 urges that the trial court erred in rendering judgment for treble damages because the plaintiff did not provide the notice required by the Act's provisions applicable at the time plaintiff amended its petition to assert its DTPA action.

Plaintiff stipulated that it did not provide the defendant notice of its claims under the DTPA. The 1975 version of the Act, applicable at the time of plaintiff's original filing of this suit, made no requirement that a plaintiff provide the defendant written notice of its claim. The Act was amended in 1977 to provide that a plaintiff could not recover treble damages if the defendant:

(2) proves that he had no written notice of the consumer's complaint *before suit was filed.* Tex.Bus. & Com.Code, sec. 17.50A (1977). (Emphasis added).

Plaintiff's original suit was filed in 1976, and its Fourth Amended Original Petition, which added the DTPA cause of action, was filed in 1983. The appellant contends that because the DTPA cause of action was not added until 1983, the procedural notice provision of the Act's 1977 amendment applies, although the substantive provisions of the 1975 version apply since the cause of action *accrued* at that time.

■■■ Appellant cites cases illustrating the undisputed rule that DTPA notice provisions effective at the time of *filing* a DTPA cause of action should govern. He suggests that where an original suit is later *amended* to state a DTPA cause of action, the notice provisions in effect at the time of amendment should apply. In none of the cases he cites, however, was a plaintiff's original action amended, as it was

here, to add a DTPA theory of recovery based on facts already set out in the original petition. We find that the "relation back" theory applied in *Providence Hospital v. Truly*, 611 S.W.2d 127 (Tex.Civ.App. —Waco 1981, writ dism'd), governs our fact situation.

In *Truly*, the plaintiff filed a negligence cause of action in 1977, and amended his pleading in 1979 to add a DTPA claim. In overruling appellant's contention that the DTPA action was barred by the two year statute of limitations applicable to an action based on implied warranty, the court cited art. 5539b, Tex.R.Civ.Stat.Ann. (Vernon 1958), which provides for a "relation back" of pleadings based on the same "transaction or occurrence." Section 17.-50A, added by the DTPA's 1977 amendments, states specifically that the required notice must come "before suit was filed;" it does not speak to causes of action added by amended pleadings. Appellant's point of error number 12 is overruled.

Appellant contends in its points of error 13 and 14 that the trial court erred in failing to deduct the stipulated credit prior to trebling damages and prior to entering judgment that included prejudgment interest.

By their answers to Special Issue No. 4 and No. 8, the jury found that the plaintiff sustained $72,407.70 in actual damages. In answering these issues, the jury was instructed *not* to consider the credit referred to in the parties' stipulation. The plaintiff stipulated that the defendant was entitled to "a net credit, as of April 20, 1977, of $53,644.00 against the alleged losses of Israel National Oil Company asserted in this suit against Robert W. Reed."

The Texas Supreme Court held in *Smith v. Baldwin*, 611 S.W.2d 611 (Tex.1981), that offsets should be applied prior to trebling and stated:

> The actual damages suffered under sec. 17.50(b)(1) are determined by the total loss sustained by the plaintiff as a result of the deceptive trade practices. Allowable setoffs will necessarily reduce the

actual damages and hence, the sum subject to trebling.

*Id.* at 617. This holding was reiterated in *Durham v. St. John*, 645 S.W.2d 261 (Tex. 1983), and this court applied the same principle in *Dickinson State Bank v. Ogden*, 624 S.W.2d 214, 221 (Tex.Civ.App.—Houston [1st Dist.] 1981), *rev'd on other grounds*, 662 S.W.2d 330 (Tex.1984).

An exception to the *Baldwin* rule is set out in *Providence Hospital v. Truly, supra*, where the Waco court held that the offset will be credited after the trebling when it is paid by a settling third party not sued under the Act.

Set-off "is the doctrine of bringing into the presence of each other the obligation of A to B and B to A and by the judicial action of the court making each obligation extinguish the other." *Dickinson State Bank* at 221, citing *Nalle v. Harrell*, 118 Tex. 149, 12 S.W.2d 550 (1929). In this vein, the appellee argues that *Baldwin*, *Durham*, and *Dickinson State Bank* are not controlling because each of those cases dealt with off-sets between the parties, not with settling third-parties not sued under the Act. None of these cases is inconsistent with the holding in *Truly*. In our case, the source of the stipulated credit is a settling third-party who was not sued under the DTPA cause of action. Following the rationale of *Truly*, we hold that the trial court correctly trebled the actual damages found by the jury prior to deducting the credit.

Appellant cites no authority for his position under point of error number 14 that the stipulated credit should be deducted from the actual damages before interest is charged. His argument, the same as under point of error number 13, is that if the offset is allowed prior to trebling, it should also be allowed prior to the calculation of interest. Since the trial court did not err in refusing to deduct the credit before trebling, there was no error in entering judgment which included prejudgment interest calculated before deducting the credit. Appellant's points of error 13 and 14 are overruled.

Appellee's two cross-points are predicated upon its request for alternative relief in the event we deny the relief he sought and was granted under the DTPA. Since both cross-points are moot, we do not consider them.

The judgment is affirmed.