**FIREMAN'S FUND INSURANCE COMPANY and The American Insurance Company, Plaintiffs–Appellees,**

**v.**

**Clint W. MURCHISON, III and Clint W. Murchison, Jr. as Trustees for Clint Murchison, III Administrative Trust; Clint W. Murchison, Jr. and Robert Murchison as Trustees for Robert Murchison Administrative Trust; Clint W. Murchison, Jr. and Burk Murchison as Trustees for Burk Murchison Administrative Trust; Clint W. Murchison, III and Clint W. Murchison, Jr. as Trustees for Coke Ann Sanders Administrative Trust; Pacific Construction Co., Ltd.; and Waitec Development, Inc., Defendants–Appellants.**

**No. 90–1717.**

United States Court of Appeals,
Fifth Circuit.

Aug. 2, 1991.

Bobby M. Rubarts, Robert H. Mow, Jr., Hughes & Luce, Dallas, Tex., for trustee defendants.

G. Leroy Street, Geary, Stahl & Spencer, Dallas, Tex., for Pacific Const. Co. and Waitec Development.

Michael D. Farris, James A. Knox, Vial, Hamilton, Koch & Knox, Dallas, Tex., for plaintiffs-appellees.

Before GARZA, POLITZ and JONES, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

Fireman's sued the Trusts, Pacific and Waitec for losses which allegedly are covered by a General Indemnity Agreement. The district judge, finding the indemnity agreement to be unambiguous, entered summary judgment in favor of Fireman's. Because the agreement is ambiguous, however, we REVERSE and REMAND the case for a jury trial. Finding no special relationship in this case we AFFIRM the district judge on his 12(b)(6) dismissal of the good faith and fair dealing counterclaim. On remand, the district court is to determine whether the Trusts can assert their unconscionability affirmative defense under the DTPA. Assuming the evidence of unconscionability is sufficient, the defense is to be put before the jury.

*Facts and Procedural Background*

The Murchison family interests are extensive, varied, and interrelated in a complex chain of holding companies and trusts. TeCe corporation is the Murchison's main holding company. Clint W. Murchison, Jr.[1] and his four children, Clint W. Murchison, III, Burk C. Murchison, Coke Ann Saunders and Robert F. Murchison, each own twenty percent of TeCe. The TeCe interests of Clint III, Burk, Coke Ann and Robert are held in administrative trusts (Trusts). TeCe holds an eighty percent ownership interest in TSI Holdings. TSI holds ownership interests in twenty-four real estate development and construction companies, including Marina Bay Development, Pacific Construction Company and Waitec Development.

Clint W. Murchison, Jr. holds personal assets, which include Mulholland Drive Corporation and approximately fifty other companies. Murchison Brothers, a general partnership between Clint W. Murchison, Jr. and John Dabney Murchison, owns assets separate from the Trusts and Clint W. Murchison, Jr.'s personal assets.

In 1979, the Trusts, Pacific and Waitec executed a General Indemnity Agreement (GIA) in favor of Fireman's Fund to obtain bonding for various construction projects. In alleged reliance on the GIA, Fireman's, as surety, issued bonds on behalf of Marina Bay and Mulholland. Fireman's also issued supersedeas bonds on behalf of Clint W. Murchison, Jr. and TeCe. The indemnitors or their representatives requested that Fireman's issue these bonds.

Fireman's paid claims against the Marina Bay bonds for $106,939.12, and claims against the Mulholland bonds for $66,-377.33, for a total loss of $173,376.45. Fireman's eventually escaped liability on

---

**1.** Clint W. Murchison, Jr. is now deceased and his assets are held by his successor in interest. This shift in ownership interests does not affect the issues in this case. Therefore, this opinion will refer to these assets as the ownership interests of Clint W. Murchison, Jr.

the supersedeas bonds. A $300,000 claim is pending against the Mulholland bonds. Fireman's demanded that the Trusts, Pacific and Waitec indemnify it for these claims, but they refused..

In 1985, Fireman's brought this action against the Trusts, Pacific and Waitec for indemnity for Fireman's losses on the Mulholland and Marina Bay bonds, and a declaration that the GIA covered the supersedeas bonds. The Trusts filed a counterclaim against Fireman's alleging a breach of a duty of good faith and fair dealing. Pacific and Waitec filed cross-claims against the Trusts for indemnity, and the Trusts filed a cross-claim against Pacific and Waitec for declaratory relief.

The district court held that the GIA covered the Marina Bay, Mulholland and supersedeas bonds and entered summary judgment in favor of Fireman's for $173,-316.45. The district court dismissed the Trusts' counterclaim against Fireman's. The district court also awarded Fireman's $42,814.21 in attorneys' fees and expenses. The Trusts, Pacific, and Waitec appeal the summary judgment, and the Trusts appeal the attorneys' fees award.

### Standard of Review and Applicable Law

We review a summary judgment *de novo*, applying the same standard as the district court. *Degan v. Ford Motor Co.*, 869 F.2d 889, 892 (5th Cir.1989). Summary judgment is appropriate if there is "no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Because this suit is based on diversity jurisdiction, we must apply Texas substantive law to determine whether Fireman's was entitled to judgment as a matter of law.

### Ambiguous?

Under Texas law, the general rules of contract construction are applicable to indemnity agreements. *Liberty Steel Co. v. Guardian Title Co. of Houston, Inc.*, 713 S.W.2d 358, 360 (Tex.App.—Dallas 1986, no writ). Whether a contract

is ambiguous is a question of law. *Hettig & Co. v. Union Mut. Life Ins. Co.*, 781 F.2d 1141, 1143 (5th Cir.1986) (citing *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex.1983)). A contract is ambiguous if it is reasonably subject to more than one meaning. *Id.* In construing a contract, the court must give meaning to each of its provisions, in light of the circumstances surrounding the contract's execution, excluding statements of parties as to what they intended. *Id.* If a contract is ambiguous, summary judgment is inappropriate because the interpretation of a contract is a question of fact. *Toren v. Braniff, Inc.*, 893 F.2d 763, 765 (5th Cir.1990); *Reilly v. Rangers Management, Inc.*, 727 S.W.2d 527, 529 (Tex.1987).

The Trusts, Pacific and Waitec contend that the GIA is ambiguous because it is susceptible to more than one reasonable interpretation, and therefore summary judgment was inappropriate. Pacific and Waitec argue that the GIA could reasonably be interpreted to cover bonds issued for the benefit of any entity in which *any* of the indemnitors has an ownership interest, or to cover only bonds issued for the benefit of an entity in which *each* indemnitor has an ownership interest. The Trusts assert a third possible interpretation; the GIA covers only bonds issued for Pacific. The dispute over the GIA's scope is based on the following provisions:

KNOW ALL MEN BY THESE PRESENTS, that whereas the undersigned, hereinafter called Indemnitors, have requested and do hereby request FIREMAN'S ... to execute or procure the execution of such bonds, undertakings, or recognizances (all of which are hereinafter included within the term "bond or bonds") as have been and such as may hereafter be applied for directly or through an agent, attorney or other representative or required, solely or as co-adventurer with others, *by any of the Indemnitors* or by any person, firm, corporation or association whose name shall, for that purpose, have been furnished to the Surety by any of the Indemnitors, it being understood and agreed that this instrument shall cover all bonds so ap-

plied for and executed, whether or not this instrument is referred to or mentioned in connection therewith;

21. Whereas, the Indemnitors have a substantial material and beneficial interest in the obtaining of said bonds on behalf of various related companies, *it is agreed that this Agreement shall apply to any bonds executed on behalf of any subsidiary, affiliated partnership, joint venture or corporation of the Indemnitors,* now existing or hereafter formed or acquired, and whether partially or wholly owned or controlled, as fully as if the names and signatures of such subsidiaries or affiliates appeared herein as Indemnitors.

(emphasis added).

■ Based on these provisions, the scope of the GIA could reasonably be interpreted to include bonds issued on behalf of an entity in which any indemnitor has an ownership interest, or only bonds issued on behalf of an entity in which all of the indemnitors have an ownership interest. The scope of the GIA could not reasonably be limited to cover only bonds issued on behalf of Pacific. Because the GIA is subject to two reasonable interpretations it is ambiguous and the district court erred in granting summary judgment. Consequently, we reverse the summary judgment and remand the case for a jury trial on the merits.

### The good faith and fair dealing counterclaim

In their counterclaim the Trusts alleged that Fireman's had breached its duty of good faith and fair dealing by issuing bonds without notice to companies outside the TeCe chain.[2] Fireman's filed a Rule 12(b)(6) motion to dismiss, which the district court granted. On appeal, the Trusts contend the district court erred in dismissing this claim. Rule 12(b)(6) allows dismissal for failure to state a claim if the district court finds that the plaintiff "can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45, 46, 78 S.Ct. 99, 101, 102, 2 L.Ed.2d 80 (1957). This court reviews the district court's disposition of a 12(b)(6) motion *de novo,* applying the same test as the district court. *See Fontana v. Barham,* 707 F.2d 221, 225–27 (5th Cir. 1983), *cert. denied,* 464 U.S. 1043, 104 S.Ct. 711, 79 L.Ed.2d 175 (1984).

■ The Trusts based their claim on *Arnold v. National County Mut. Fire Ins. Co.,* 725 S.W.2d 165 (Tex.1987). In *Arnold,* the Texas Supreme Court held that when a "special relationship" exists between the parties to a contract, there is a common law duty of good faith and fair dealing, which may give rise to a cause of action in tort. *Id.* at 167. *See also* Note, *Insureds Have A Common Law Duty To Deal Fairly And In Good Faith With Their Insureds,* 19 Tex.Tech.L.Rev. 1163 (discussing *Arnold* and its "special relationship" approach). In *Arnold,* the court found that a "special relationship" existed between the parties to an insurance contract because of the parties unequal bargaining power, and the nature of insurance contracts would allow insurers to take advantage of the insured. *Id.* While applying this duty in the insurance context, the court recognized that a covenant of good faith and fair dealing does not arise in every contract. *Id. See English v. Fischer,* 660 S.W.2d 521, 522 (Tex.1983). The Texas courts have not applied this duty to ordinary contractual relationships. *See Adolph Coors Co. v. Rodriguez,* 780 S.W.2d 477, 481 (Tex.App.—Corpus Christi

---

**2.** The allegations giving rise to this claim included Fireman's failure to notify the Trustee Defendants that bonds for any company other than Pacific and/or a TeCe company could be issued pursuant to the GIA; it failed to notify the Trustee Defendants of the millions of dollars of exposure that it subjected the Trusts to when it, without notice, issued bonds all over the country for companies and individuals wholly unrelated to the Trusts; it failed to notify the Trustee Defendants that claims had been made against the bonds, depriving the Trusts of any right to investigate to see if the claims were well founded; and it escalated the cost of the lawsuit to the Trustee Defendants by refusing to a moratorium of the litigation between Fireman's and the Trustee Defendants, awaiting the outcome of Fireman's ultimate liability on the supersedeas bonds.

1989, writ denied) (duty does not apply to supplier-distributor relationship); *Victoria Bank & Trust Co. v. Brady*, 779 S.W.2d 893, 902 (Tex.App.—Corpus Christi 1989, writ granted) (duty does not apply to debt-or-creditor relationship); *Lovell v. Western Nat. Life Ins.*, 754 S.W.2d 298, 303 (Tex. App.—Amarillo 1988, writ denied) (duty does not apply to relationship between mortgagor-mortgagee).

The Trusts argue that the GIA created a "special relationship" between Fireman's and the indemnitors, which imposed a duty of good faith and fair dealing on Fireman's. The Trusts contend they were in an unequal bargaining position because Fireman's drafted the GIA. They also assert the GIA forced them to rely on Fireman's to protect their rights. Therefore, they claim the GIA created a "special relationship" between the indemnitors and Fireman's.

■ The Trusts represent a group of very sophisticated businessmen[3], who were represented by capable attorneys while negotiating the GIA. They are not in the same position as an insured in relation to an insurance company. There was no disparity of bargaining power when the GIA was negotiated. The public policy concerns expressed in *Arnold* do not appear in this contractual relationship. Because the Trusts could not prevail on this claim, the district court did not err in granting Fireman's 12(b)(6) motion.

### The unconscionability affirmative defense

As an affirmative defense, the Trusts alleged that Fireman's violated the Deceptive Trade Practices Act, Tex.Bus. & Com. Code Ann. § 17.45(5) (Vernon's 1987), by issuing the supersedeas and Mulholland bonds. The Trusts contend it was unconscionable for Fireman's to issue those bonds because the Trusts received no bene-

fit from the bonds and faced great potential liability. The Trusts based this claim on the DTPA § 17.45(5)(B), which provides an unconscionable act is one that "results in a gross disparity between the value received and consideration paid, in a transaction involving transfer of consideration." On appeal, the Trusts argue the district court erred by not addressing this affirmative defense and that this claim raises a factual issue for a jury.

■ The purpose of the DTPA is to "protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty...." Tex.Bus. & Com.Code Ann. § 17.44 (Vernon's 1987). The code defines a consumer as an "individual, partnership, [or] corporation ... who seeks or acquires by purchase or lease, any goods or services, except that the term does not include a business consumer that has assets of $25 million or more, or that is owned or controlled by a corporation or entity with assets of $25 million or more." Tex.Bus. & Com.Code Ann. § 17.45(4). Under the DTPA, the claimant has the burden of proof on all elements of his cause of action, including proof that he was a consumer. *Reed v. Israel Nat. Oil Co., Ltd.*, 681 S.W.2d 228, 234 (Tex.App.—Houston [1st Dist.] 1984, no writ). The trial judge decides consumer status as a question of law. *Id.* at 233.

■ Although the record does not disclose[4], it is very unlikely that the Trusts' assets are less than $25 million. Therefore, the Trusts probably could not establish the elements of their DTPA defense. If the Trusts can establish consumer status under the DTPA, then their defense could be submitted to a jury[5] to determine whether Fireman's violated the terms of the DTPA. Texas courts construe the DTPA liberally and comprehensively to

---

**3.** Until recently, the Murchison family owned the Dallas Cowboy franchise. As stated in the fact section of this opinion, the Murchison family interests are extensive and varied.

**4.** Perhaps this is the reason the district judge did not address this defense. The claimant must prove his consumer status. Nevertheless, the

judge should have stated this reason in an order or opinion.

**5.** This statement assumes there is sufficient evidence to put the defense of unconscionability before the jury.

protect consumers from fraudulent business practices. *First Title Co. of Corpus Christi, Inc. v. Cook*, 625 S.W.2d 814, 817 (Tex.Civ.App.—Ft. Worth 1981, writ dismissed). Although the Texas courts have applied the DTPA to a variety of "services," they have not applied it to an indemnity contract. *See e.g., La Sara Grain Co. v. First Nat. Bank of Mercedes*, 673 S.W.2d 558, 564 (Tex.1984) (bank services provided with a checking account are within scope of DTPA); *Lucas v. Nesbitt*, 653 S.W.2d 883, 886 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.) (DTPA applies to attorneys' services); *McNeill v. McDavid Ins. Agency*, 594 S.W.2d 198, 202 (Tex.Civ. App.—Ft. Worth 1980, no writ) (insurance policy is service within scope of DTPA). *But see Riverside Nat. Bank v. Lewis*, 603 S.W.2d 169, 175 (Tex.1980) (extension of credit not covered under the DTPA). We need not, and do not, make an *Erie* guess at this time as to whether the DTPA applies to an indemnity contract.

### Conclusion

The other issues advanced by the Trusts, Pacific and Waitec will not be addressed because we are remanding the case for a jury trial on the merits. The GIA was ambiguous because it was reasonably susceptible to more than one meaning. The district court erred when it decided the document was not ambiguous. Dismissal of the Trusts' counterclaim by means of Fed.R.Civ.P. 12(b)(6) was proper. The facts of this case provide no special relationship which would give rise to the duty of good faith and fair dealing under Texas law. If the Trusts can establish DTPA consumer status and if the trial judge decides there is enough evidence of unconscionability under the DTPA to put the affirmative defense to the jury, that defense too will be litigated at the trial on the merits. Accordingly, the case is REVERSED and REMANDED in accordance with this opinion.