**BOYD INTERNATIONAL, LTD.,**
**Plaintiff–Appellee,**

v.

**HONEYWELL, INC.,**
**Defendant–Appellant.**

**No. 87–1042.**

United States Court of Appeals,
Fifth Circuit.

Feb. 22, 1988.

---

A.W. Sorelle, III, Marty L. Rowley, Amarillo, Tex., Paul A. Koches, William E. Wickens, SuzAnne C. Nyland, Washington, D.C., for defendant-appellant.

Tracey D. Conwell, Michael A. Caddell, Houston, Tex., for plaintiff-appellee.

Before WISDOM, GEE, and CAROLYN DINEEN KING[*], Circuit Judges.

[*] Formerly Carolyn Dineen Randall.

**PER CURIAM:**

This appeal concerns notice requirements under the Texas Deceptive Trade Practices Act ("DTPA").

Boyd International, Ltd., was the contractor and Honeywell, Inc., a subcontractor on an officer's quarters building constructed at Sheppard Air Force Base near Wichita Falls, Texas. Specifications for the building include requirements for two elements of the structures climate control system: an Energy Monitoring and Control System ("EMCS") for the entire quarters and temperature controls for each of the quarters individual apartments. The specifications require that all EMCS work be done by Honeywell, but designate no particular party to supply and install the temperature controls.

Disputes arose between them and, on October 17, 1984, Boyd filed suit against Honeywell. Boyd's complaint asserts that Boyd had "paid Honeywell's full price for the EMCS and the temperature controls," that "Plaintiff has given written notice to Defendant of its specific complaint and the amount of damages, expenses and fees," and that Honeywell had "illegally tied" the sale of the EMCS and temperature controls. The first six counts of the complaint assert violations of the federal antitrust laws and the Texas Free Enterprise and Antitrust Act. The seventh count claims damages from an unspecified "deceptive trade practice in violation of the Texas Deceptive Trade Practices Act", cites to Tex.Bus. & Comm.Code Ann. § 17.46 (which defines and outlaws over 20 "deceptive trade practices"), and demands the treble damages provided for by the DTPA.

Contrary to its assertions, however, Boyd had not in fact sent Honeywell any written notice of its intent to file a DTPA claim before doing so and sent none until October 23, 1984. On December 4, 1984, Boyd filed an amended complaint asserting a new theory (noticed by its October 23 letter) for Boyd's DTPA damage claim— the " 'gross disparity' between the value received by Boyd pursuant to its contract with Honeywell and the amount charged by

Honeywell for this work"—and citing to a different portion of the Tex.Bus. & Comm. Code Ann.—§ 17.45, which uses this language to define "unconscionable action" by a seller. As did Boyd's first complaint, the amended complaint seeks treble damages under the DTPA. After further developments unnecessary to an understanding of our decision, a jury found, among other things, that there was indeed a "gross disparity," and that Boyd's actual damages resulting from the "gross disparity" were $211,092. The jury awarded Boyd treble damages, the maximum punitive damages allowed by the DTPA. The jury also found for Boyd and awarded treble damages under the federal antitrust law. Because the DTPA and antitrust claims derived from the same facts, Boyd was required to elect a claim for recovery. Boyd elected the DTPA claim.

The trial court's judgment and order awarded Boyd $513,826 in damages, penalties, attorneys' fees and costs. In addition, the court awarded prejudgment interest on $211,092 through August 12, 1985—the date of Honeywell's payment to Boyd—but later reduced the principal by the amount of a payment on account made earlier by Honeywell.

Honeywell appeals, challenging the sufficiency of Boyd's notice of its DTPA damage suit and other aspects of the trial. Because we must reverse on the notice issue, we need not discuss its other claims.

### Notice Under DTPA

DTPA Section 17.50 lays out several theories for "relief for consumers." Tex.Bus. & Comm.Code Ann. § 17.50(a) (Vernon Sup.1987).[1] Boyd's original complaint, filed without notice to Honeywell, contains a damage claim based on the "deceptive trade practices" theory. The amendment to Boyd's complaint, filed more than 30 days after Boyd had sent its notice letter to

Honeywell, contains a damage claim based on the "unconscionable action" theory.

We must determine the effect on Boyd's action of the DTPA's notice requirement. That requirement states:

As a prerequisite to *filing a suit* seeking damages under Subdivision (1) of Subsection (b) of Section 17.50 of this subchapter against any person, a consumer *shall give written notice to the person at least 30 days before filing the suit* ...

Id. § 17.50A(a) (emphasis added).

Boyd maintains that "filing a suit" includes amending a "suit" already on file, one that contains a damage claim under Section 17.50, by adding a damage claim under another DTPA theory. In Boyd's view, because its "gross disparity" claim was different from the DTPA claim in its first complaint, the notice requirement for that claim should be measured from the date Boyd's complaint was amended to include the new claim.[2] Boyd cites *Foster v. Daon Corp.,* 713 F.2d 148, 151 (5th Cir. 1983), which can be read as offering a degree of implicit support to this view. *Foster* involved a plaintiff who, like Boyd, failed to give adequate notice before filing her DTPA claim. Our Court reversed the trial court for failing to grant the plaintiff's initial request for a temporary nonsuit without prejudice to allow her to refile the claim in thirty days. Id. After her request for a nonsuit was rejected, the *Foster* plaintiff, like Boyd here, tried to salvage her DTPA action by giving notice to the defendant and then adding a different DTPA claim. Because the two-year statute of limitations had all but run on her DTPA claims, however, the *Foster* plaintiff could not wait 30 days to file the new DTPA claim. The trial court disallowed the amendment, citing the 30–day limit. We held that the trial court should have allowed the addition of the new DTPA

---

1. Among other things, it grants a right of action for "unconscionable action" and "deceptive trade practices" by a seller. Id. § 17.50(a)(1), (3). "Unconscionable action" is defined by Section 17.45(5) and "deceptive trade practices" are defined by Section 17.46(b). Section 17.50(b)(1) gives consumers a right to actual damages and

provides for treble damages against a seller whose acts are "committed knowingly."

2. As will become apparent, we need not and do not address or decide this contention in today's case: one in which no notice of any kind was given before the initial action was filed.

claim under the statutory exception in Section 17.50A(b).[3] Id. at 152. Implicit is that a failure to give notice before filing a DTPA suit does not bar the addition of a different DTPA damage claim by amendment, so long as adequate notice is given before the date of the amendment.

Honeywell maintains, for its part, that no effective notice can be given while a DTPA lawsuit is pending, another unnecessarily broad contention that we need not accept or reject in toto in order to decide today's case. This argument is powerfully supported, however, by clear language in Section 17.50A(a): Because Boyd failed to give notice 30 days before *"filing a suit"* asking for DTPA damages, Boyd's original DTPA claim as well as any new DTPA claims Boyd seeks to add to the same suit are disallowed by Section 17.50A(a). Honeywell correctly notes that the primary purpose of the DTPA notice requirement is to discourage litigation and encourage settlement, in particular, out-of-court settlement. *See Jim Walter Homes, Inc. v. Valencia,* 679 S.W.2d 29, 36 (Tex.App.—Corpus Christi 1984), aff'd as modified, 690 S.W.2d 239 (Tex.1985); *Blumenthal v. Ameritex Computer Corp.,* 646 S.W.2d 283, 286 (Tex.App.—Dallas 1983, no writ). This purpose is frustrated if plaintiffs are permitted to evade the notice requirements by filing suit first and giving the initial notice later, at a time when fees and expenses have already been incurred, when the matter is already before the court, and when the hope of a settlement without litigation has been cast away; nor does Texas authority appear to countenance such a course of procedure.

Several Texas Appeals court cases, for example, provide that the only way to correct a DTPA suit filed with inadequate notice is to stop and start over again: a dismissal with leave to refile the suit thirty days after giving notice. *Reed v. Israel National Oil Company, Ltd.,* 681 S.W.2d 228, 239–40 (Tex.App.—Houston [1st Dist.] 1984, no writ), held that, in a contract suit later amended to include a DTPA damage claim, the notice requirement related back to the time when suit was initially filed, not to the time of the amendment. *Id.* at 240.[4] *Reed* cites the "relation back" theory applied in *Providence Hospital v. Truly,* 611 S.W.2d 127 (Tex.App.—Waco 1981, writ dism'd) as offering guidance. *See Reed,* 681 S.W.2d at 240. The court in *Truly,* though silent on causes of action added by amended pleadings, is cited for allowing a "relation back" of pleadings based on the "same transaction or occurrence." *Id.* This reasoning must apply *a fortiori* where, as here, the initial complaint contains a DTPA claim. The *Reed* court noted that:

> Section 17.50A ... states specifically that the required notice must come *"before the suit was filed"*; it does not speak to causes of action added by amended pleadings.

*Id.* (Emphasis added).

Honeywell also cites authority for the proposition that, in a DTPA suit filed without adequate notice that erroneously proceeds to a treble damage award, either the case must be remanded for an abatement proceeding, or the damages must be reduced to actual damages, *see Sunshine Datsun,* 680 S.W.2d at 654–55; *see Hollingsworth Roofing v. Morrison,* 668 S.W.2d at 872, 875 (Tex.App.—Ft. Worth 1984, no writ); *Blumenthal,* 646 S.W.2d at 287. The most recent decision which our research has discovered is to like effect as these authorities. In *Certainteed Corporation v. Cielo Dorado Development, Inc.,* 733 S.W.2d 247 (Tex.App.—El Paso 1987, writ granted), a judgment under the DTPA

---

3. Section 17.50A(b) provides:

> If the giving of 30 days' written notice is rendered impracticable by reason of the necessity of filing suit in order to prevent the expiration of the statute of limitations or if the consumer's claim is asserted by way of a counterclaim, the notice ... is not required. Id. § 17.50A(b).

4. Although the Texas Supreme Court apparently has not addressed this issue, *Sunshine Datsun, Inc. v. Ramsey,* 680 S.W.2d 652, 655 (Tex.App.—Amarillo 1984, no writ), suggests that the Texas Supreme Court's construction of the mandatory presuit notice requirements of statutes similar to the DTPA supports Honeywell (*citing Schepps v. Presbyterian Hospital of Dallas,* 652 S.W.2d 934 (Tex.1983)).

was reversed for the giving of the required thirty day notice where the only evidence that any notice whatever had been given was testimony by the plaintiff's attorney that "a demand letter was sent ... pursuant to the Deceptive Trade Practices Act." *Id.* at 249. Holding that the DTPA required that notice be given of "the amount of actual damages claimed as well as attorney's fees and other expenses," that the testimony quoted wholly failed to establish that this was done, and that "the statute is to be enforced as interpreted by its express language,"[5] the court reversed.

 In today's case, no notice whatever was given before suit was filed; and the DTPA judgment therefore cannot stand. To countenance such an entire failure to comply with the Act's notice requirement before bringing suit would frustrate its purpose to encourage settlement and minimize litigation, and we cannot do so. Faced with the extreme case presented, we need not and do not decide whether, in view of Texas's policy allowing free amendment of pleadings, the amending of a properly-noticed existing DTPA action to incorporate a new DTPA theory after thirty days notice of the proposed new theory would suffice to permit the eventual entry of judgment on that theory. We decide only that proper notice of a DTPA action must be given *before suit is initially brought* if the treble damages remedies of the DTPA are to be granted in the case. Insofar as *Foster v. Daon, supra,* may be read to the contrary, we conclude that Texas decisions handed down subsequent to it require that we hold as we do.

### Waiver

 Boyd contends that even if its notice was inadequate Honeywell waived any objection to it. Boyd's brief states that the holding of *Pool Company v. Salt Grass Exploration,* 681 S.W.2d 216 (Tex.App.—Houston [1st Dist.] 1984, no writ), is that

failure to raise with specificity the defects in a DTPA notice letter by either motion or a plea in abatement *constitutes a waiver* [sic] of such claim. (Emphasis added).

Boyd Brief at 18.[6] This greatly overstates the holding. *Pool Company* held that a defendant who, until appeal, raised no objection *whatever* to the inadequacy of the DTPA notice or to testimony about the DTPA cause of action waived its right to object on appeal. See *Id.* at 219.

 Boyd's other waiver arguments are based on minor deficiencies in Honeywell's amended answer: Honeywell's pleadings refer to the lack of notice as an "affirmative defense" and do not specify that it was a lack of *DTPA* notice that Honeywell asserts. Boyd contends that Federal Rules of Civil Procedures 8(b) and 9(c), among other pleading rules, require that Honeywell be held to have waived its right to object to Boyd's notice. We reject these arguments. There is no doubt that Boyd's DTPA notice letter was in issue in the trial court; its order in connection with its judgment address the matter. There was no waiver.

### Conclusion

For the reasons stated, the judgment of the trial court is REVERSED and the cause is REMANDED for further proceedings consistent with our holdings.

---

**5.** Citing to *Cail v. Service Motors, Inc.,* 660 S.W. 2d 814, 815 (Tex.1983).

**6.** The brief's use of "emphasis added," in parenthesis, gives the (doubtless unintended) impres-

sion that Boyd is quoting from *Pool Company.* While some of the words come from different parts of the opinion, we do not find this precise language in it.