**STATE FARM FIRE AND CASUALTY COMPANY, Appellant,**

v.

**Larry and Emalu PRICE, Appellee.**

No. 07–91–0245–CV.

Court of Appeals of Texas, Amarillo.

Dec. 31, 1992.

Rehearing Denied Jan. 25, 1993.

Underwood Wilson Berry Stein & Johnson, PC, Kelly Utsinger and Kevin Parker, Amarillo, for appellant.

Hamker & Walton, PC, Ed Walton, Amarillo, for appellee.

Before REYNOLDS, C.J., and BOYD and POFF, JJ.

REYNOLDS, Chief Justice.

Advancing perceived procedural and evidentiary errors and the unconstitutionality of a provision of the Texas Insurance Code, State Farm Fire and Casualty Company seeks a reversal of the trial court's judgment decreeing its monetary liability to Larry and Emalu Price under its homeowners insurance policy issued to them. Based upon the rationale to be expressed below, we will overrule State Farm's nine points of error and affirm the judgment.

The Prices purchased a homeowners protection policy of insurance from State Farm insuring, under Coverage A, damage to or loss of their home located in Amarillo. Excluded from the "Perils Insured Against" was, among other things:

k. Loss under Coverage A caused by settling, cracking, bulging, shrinkage, or expansion of foundations, walls, floors, ceilings, roof structures, walks, drives, curbs, fences, retaining walls or swimming pools.

However, as the policy provided:

The foregoing Exclusion[ ] ... k shall not apply to Accidental discharge, leakage or overflow of water or steam from within a plumbing, heating or air conditioning system or a domestic appliance (including necessary tearing out and replacing any part of the building covered).

While the policy was in force, the Prices' home experienced settling and cracking damage, and they made a claim under the policy.

Danny Baca made an initial plumber's inspection. Afterwards, Don Eudaly, a claims adjuster for State Farm, communicated to the Prices his belief that the claim was a covered loss under the policy because Baca determined the damage was

caused by a plumbing leak under the house.

At State Farm's request, further inspections were made by Kenneth Bitting, an engineer from Dallas. Based upon Bitting's investigation and stress analysis, State Farm determined the home had settled naturally over a period of years, and the loss was not covered. State Farm subsequently denied the claim.

Alleging a breach of contract, the Prices filed suit against State Farm on 12 July 1989. The following day, the Prices' attorney sent a demand letter notifying State Farm of claims for actual and punitive damages and attorneys' fees under the Deceptive Trade Practices—Consumer Protection Act (DTPA)[1] and the Texas Insurance Code.[2] On 21 August 1989, more than thirty days after the demand letter was received by State Farm, the Prices amended their petition to include allegations of breach of contract, violations of the DTPA and article 21.21, promissory estoppel, fraud, and breach of the duty of good faith and fair dealing.

On 28 March 1991,[3] State Farm was notified the matter was set for trial on April 15. State Farm filed a motion for continuance on the ground that additional time was needed to complete discovery and prepare for trial. The motion was granted and the trial was re-set, without a stated objection, for May 6.

State Farm first propounded written interrogatories and requests for production to the Prices on April 5. At State Farm's request, the court, by its April 15 order, shortened the response time for the Prices to May 3. On that day, pursuant to the court's order, State Farm received the responses. In the interim, on April 26, State Farm moved the court to abate the Prices' suit and strike their pleadings, because they failed to give pre-filing notice of their suit as required by law.

Pre-trial matters were heard by the court on May 3. At that time, the court denied State Farm's plea in abatement and motion to strike the Prices' pleadings, its motion to exclude the testimony and evidence of expert witnesses designated in the Prices' response to the interrogatories, and its request to enter and inspect the property.

On the day set for trial, May 6, the thirty-ninth day after the first setting of the cause for an April 15 trial, the jury was empaneled, but before voir dire examination or an announcement of ready, State Farm requested a second continuance because the trial court failed to provide forty-five days notice of the trial setting required by rule 245 of the Texas Rules of Civil Procedure. The trial court denied the motion and proceeded to trial.

After hearing the evidence and being charged, the jury found in response to the numbered questions which are material to this appeal, that, as summarized:

● (1) the damages to the Prices' home were proximately caused by accidental discharge, leakage or overflow of water or steam from within a plumbing, heating or air conditioner system or a domestic appliance;

● (2) State Farm agreed to cover the Prices' loss due to such damage, (3) but failed to comply with that agreement, (4) to their damage in specified particulars in the total sum of $102,500;

● (5k) State Farm knowingly did not attempt in good faith to negotiate a fair settlement of the claim where liability was reasonably clear, (5l) compelling the Prices to bring this suit to recover the amount due under the policy; (5m) knowingly denied the claim when there was no reasonable basis to do so, which State Farm knew, and (5n) should have known; (5o) State Farm knowingly attempted to conceal the true nature and cause of the

---

1. All references herein to the DTPA are to the Texas Business & Commerce Code Annotated § 17.41 *et seq.* (Vernon 1987).

2. All references herein to article 21.21 are to article 21.21 of the Texas Insurance Code Annotated (Vernon Supp.1992).

3. Unless otherwise specified, all dates of events hereafter recited are in the calendar year 1991.

problems with the home; and (5q) knowingly refused to pay the claim; each of which was a producing cause of damages;

● (6) State Farm's conduct was an unfair or deceptive practice in the business of insurance;

● (8) State Farm breached its duty of good faith and fair dealing owed to the Prices, (9) which was a proximate cause of damages to them;

● (10) Compensation for State Farm's acts which were found to be the proximate or producing cause of the damages, was $90,000 as the cost of repairs, $8,500 for additional living expenses, and $2,000 each to Larry and Emalu Price for mental anguish; and

● (11A) "40 percent" of the Prices' recovery was a reasonable recovery for attorney's fees, and (11B) $40,800 was a reasonable attorney's fee for preparation and trial of the cause, with additional amounts totaling $16,000 for the appellate process.

The Prices moved for judgment on the jury's verdict; State Farm moved for a judgment notwithstanding the verdict. The judgment rendered by the court decreed that the Prices recover from State Farm $90,000 for repairs, $8,500 for additional living expenses, $4,000 for mental anguish, $123,000 in attorneys' fees, and $205,000 as twice the actual damages.

Utilizing a nine-point attack, State Farm contends the trial court erred in proceeding to trial and in its award of judgment to the Prices. This obtains, State Farm submits, because the trial court erred in (1–2) failing to provide forty-five days notice of the trial setting as required by rule 245, *supra*, (3) failing to grant a new trial due to the lack of statutory notice of claims made under the DTPA, (4) awarding treble damages despite the lack of statutory notice of claims made under the DTPA, (5) allowing the testimony and evidence of expert witnesses whose identities and information were not properly supplemented thirty days prior to trial, (6) the manner of the submission of the charge to the jury, (7) awarding judgment on jury findings which were not supported by legally or factually sufficient evidence, (8) allowing Burl Peterson to testify concerning his inspection of the premises made on the fourth day of trial, and (9) assessing punitive damages under article 21.21 because the statute is unconstitutional. We will address these contentions seriatim.

■ State Farm premises its first- and second-point contentions on the notice requirement provided in rule 245, *supra,* which, as pertinent to the contentions, provides that:

The court may set contested cases on written request of any party, or on the court's own motion, with reasonable notice of not less than forty-five days to the parties of *a first setting for trial,* or by agreement of the parties; provided, however, that when a case previously has been set for trial, the Court may reset said contested case to a later date on any reasonable notice to the parties or by agreement of the parties. (Emphasis added.)

State Farm submits that the notice requirement is mandatory, and the failure to provide it with forty-five days notice of trial is a denial of due process and reversible error.

Although State Farm now relies upon the rule to charge the trial court with error in failing to provide it with forty-five days notice of trial, it did not invoke the rule in response to the first setting of the cause for trial; instead, State Farm moved for, and was granted, a continuance on the ground of a need for more time to conduct discovery and prepare for trial, although State Farm did include a statement that the Prices failed to follow local rules in requesting a trial setting. Upon granting the continuance, the court reset the cause for trial on May 6. State Farm did not voice any objection to the setting; rather, it proceeded to prepare for trial and, on the day of trial, interposed the rule 245 notice requirement for a first setting to seek a continuance from the *second* setting of the cause for trial.

By the clear language of rule 245, the forty-five day notice applies only to the

first setting of the trial. By failing to timely and specifically object to the first setting on the basis of insufficiency of notice under rule 245, State Farm failed to preserve any error for our review. Tex. R.App.P. 52(a). The first two points of error are overruled.

■ The gist of State Farm's third- and fourth-point contentions is that the Prices failed to give statutory notice of their claims under the DTPA and the Insurance Code before filing suit. As a result, State Farm argues, the trial court erred in denying its plea in abatement, motion for new trial, and motion for judgment notwithstanding the verdict, as well as in awarding treble damages.

At the time applicable, the notice provision of the DTPA provided:

As a prerequisite to filing a suit seeking damages under Subdivision (1) of Subsection (b) of Section 17.50 of this subchapter against any person, a consumer shall give written notice to the person at least 30 days before filing the suit advising the person of the consumer's specific complaint and the amount of actual damages and expenses, including attorneys' fees, if any, reasonably incurred by the consumer in asserting the claim against the defendant.

Tex.Bus. & Com.Code Ann. § 17.505(a) (Vernon 1987).[4] The Texas Insurance Code contains a similar 30–day notice provision as a prerequisite to filing a suit seeking damages for, among other reasons, any practice defined in Section 17.46 of the DTPA as an unlawful deceptive trade practice. Tex.Ins.Code Ann. § 16(e) (Vernon Supp.1992).

State Farm does not contend that the demand letter was not received, nor that it was insufficient under the notice requirements of either statute; its contention, raised by a pretrial plea in abatement, is only that notice was sent after the original suit was filed. As support for its conten-

tion, State Farm relies primarily on its interpretation of "pre-suit notice," as that term was used in *Sunshine Datsun, Inc. v. Ramsey*, 680 S.W.2d 652 (Tex.App.—Amarillo 1984, no writ), *disapproved on another ground, Hines v. Hash*, 843 S.W.2d 464, 469 (1992), and the opinion in *Boyd Intern., Ltd. v. Honeywell, Inc.*, 837 F.2d 1312 (5th Cir.1988). State Farm argues, from selected authoritative excerpts, that since the notice of claims must have been sent thirty days before a person may file any suit on a DTPA claim, the procedure followed in this cause so subverts the purpose of the notice requirements that the decisions reached in either *Sunshine Datsun* or *Boyd International* must be applied. Thus, State Farm concludes, if we opt to apply the *Sunshine Datsun* decision, as it requests, the judgment must be reversed and the cause remanded for a new trial after an abatement to allow for the giving of a proper notice;[5] or, if we choose to apply the *Boyd International* decision, the judgment must be reformed to limit the Prices' recovery to actual damages and related attorney's fees.

■ However, we do not apply either of the decisions reached in *Sunshine Datsun* or *Boyd International*, for those decisions were made on factual situations inapposite to the facts adduced in this cause. In *Sunshine Datsun*, the pre-suit notice was defective and objected to on that ground; hence, in order to more reasonably effect the legislative scheme of consumer protection, the judgment obtained by the consumer was reversed and the cause was remanded for an abatement of the suit to allow the giving of the statutory notice as a condition to litigating the consumer's claims. 680 S.W.2d at 655. However, because the *Sunshine Datsun* defendant had not moved for an abatement, the decision to reverse and remand for an abatement of the suit to allow the statutory notice to be given was ultimately disapproved in *Hines v. Hash*,

---

4. The statute was amended effective 1 September 1989 to provide that the notice shall be given at least 60 days before filing suit. Tex. Bus. & Com.Code Ann. § 17.505(a) (Vernon Supp.1992).

5. Interestingly, State Farm does not suggest how this option affords it any more opportunity for settlement and avoidance of litigation expenses, the purpose of the notice, than did the pre-amendment notice it first received in July, 1989.

843 S.W.2d at 469, which held that a defendant who fails to make a timely request for abatement must be considered to have waived his objection to the lack of notice. *Id.* Nevertheless, the *Hines* decision does not aid State Farm in its attempt to fault the trial court for denying its plea in abatement, which was untimely filed ten days before trial and almost twenty-eight months after the Prices filed their DTPA and Insurance Code actions. To be timely, the request for abatement must be made while settlement and avoidance of litigation expense remain viable, usually when the answer is filed or soon thereafter, and to show error in the denial on appeal, the requester must show he was harmed, ordinarily by showing he was unable to limit his damages by tendering a settlement offer. *Id.* at 468–69. State Farm did neither.

In *Boyd International*, the suit claiming damages for an unspecified violation of the DTPA was filed before any notice was given, and following the giving of notice, an amended complaint asserting a new theory of violation of the DTPA was filed. The court "decide[d] only that proper notice of a DTPA action must be given *before suit is initially brought* if the treble damage remedies of the DTPA are to be granted in the case." 837 F.2d at 1316.

Distinctively, the Prices initiated this litigation by alleging a breach of contract action, then noticed their complaints of DTPA and article 21.21 violations, and thereafter amended their pleadings to allege those violations. Their amendment was permitted by the Texas tradition, existing for more than one hundred years, of allowing the free amendment of pleadings, *Boren v. Billington*, 82 Tex. 137, 18 S.W. 101 (1891), subject to certain limitations, none of which were interposed to the amendment. *See* Tex.R.Civ.P. 63; *Goswami v. Metropolitan Sav. and Loan*, 751 S.W.2d 487, 490 (Tex.1988). However, before the amendment was filed, State Farm was given the notice required by the DTPA and the Insurance Code, the sufficiency of which has not been challenged, to permit it the opportunity to negotiate and settle the amended causes of action without exposure to the additional damages and attorney's fees resulting from the successful prosecution of the actions. *Cielo Dorado Dev. v. Certainteed Corp.*, 744 S.W.2d 10, 11 (Tex. 1988) (Gonzalez, J., dissenting). Thus, the Prices met the statutory requirements to recover damages for violations of the DTPA and article 21.21.

It logically follows, and we hold, that the Prices' pending action for breach of contract did not bar their amendment to allege DTPA and article 21.21 causes of action after the requisite notice was timely given before the amendment was filed. State Farm's points of error three and four are overruled.

■ State Farm utilizes its fifth point to charge the trial court with error in admitting the testimony and reports of Burl Peterson and Lawrence Keaton, as well as all other expert witnesses, because the Prices failed to timely identify the experts and provide their reports in response to its prior request. The events giving rise to this point began on 22 December 1989 when, in connection with the deposition of the Prices, State Farm served a subpoena duces tecum, requesting the production of all documents, including all reports, "prepared by any experts which the [Prices] intend to call at the trial of this action." When inquiry was made during the deposition regarding the documents, the Prices' counsel replied that they had not yet designated expert witnesses, and consequently they had no reports to produce in response to the subpoena. Subsequently, as noted in the forepart of this opinion, State Farm propounded its April 5 interrogatories and, within the shortened response time requested by State Farm, the Prices identified their expert witnesses and their reports on May 3, three days before the 1991 trial date.

At trial, the court, over State Farm's objection, permitted Peterson and Keaton, as well as other witnesses, to give testimony and offer reports regarding the cause of damage to the foundation of the Prices' home. Given these events, State Farm contends that the Prices had a duty to supple-

ment their response made at the deposition by identifying their expert witnesses and the subject matter of their testimony at least thirty days before trial. Not having done so, State Farm concludes, the court erred in admitting the testimony and the reports. We are not persuaded to accept the conclusion.

■ When a party has correctly and completely responded to a request for discovery, there is, subject to certain exceptions, no duty imposed on the party to supplement the response to include information thereafter acquired. One of the exceptions, which is material to State Farm's contention, is that if the party expects to call an expert witness whose identity or the subject matter of the expert's testimony has not been previously disclosed "in response to an appropriate inquiry directly addressed to these matters," the response must be supplemented to identify the expert and the substance of the testimony to be given by the expert as soon as practical, but not less than 30 days prior to the beginning of trial, unless the court finds good cause exists for permitting or requiring later supplementation. Tex. R.Civ.P. 166b(6)(b).

It is at once apparent that the subpoena duces tecum served by State Farm only required the production of the experts' reports; it was not "an appropriate inquiry addressed to the[ ] matter[ ]" of the identity of experts having knowledge of relevant facts. Tex.R.Civ.P. 166b(2)(d); *Gutierrez v. Dallas Independent School Dist.*, 729 S.W.2d 691, 693 (Tex.1987) (citing *Employers Mut. Liability Ins. Co. of Wis. v. Butler*, 511 S.W.2d 323, 324–25 (Tex.Civ.App.—Texarkana 1974, writ ref'd n.r.e.)). Consequently, the subpoena imposed no duty on the Prices to supplement their counsel's verbal response that experts had not yet been designated by later supplying the names of persons to be called as experts at trial. *Cf. Limas v. De Delgado*, 770 S.W.2d 953, 954 (Tex.App.—El Paso 1989, no writ) (an interrogatory inquiring of expert witnesses expected to be called at trial was the wrong procedure to attempt to procure the witnesses' reports).

Moreover, when State Farm initiated its April 5 discovery seeking, among other matters, the identity of experts who may be called as witnesses and their reports, and then moved the court to shorten the Prices' response time, it invited the court to exercise its power to expedite the disposition of the cause by a pretrial order. Tex.R.Judicial Admin. 7(a)(6); Tex.R.Civ.P. 166. Once the court heard and granted the motion with the order for the Prices to respond on or before May 3, the court's directive controlled the subsequent course of the response. *Koslow's v. Mackie*, 796 S.W.2d 700, 703 (Tex.1990); *Werner v. Miller*, 579 S.W.2d 455, 456 (Tex.1979).

Pursuant to the court's order, the Prices' response contained the identity of their experts and their reports; yet, State Farm sought to prevent the experts from testifying and the reports from being introduced, because the experts were not identified and their reports were not furnished 30 days in advance of trial. Having requested the identity of all persons with knowledge of the subject matter of the litigation only 31 days before the trial date, and having received their designation, and the identity of their reports, within the time fixed by the court's order it requested, State Farm is in no position to charge the court with error in admitting the testimony and reports of the designated persons. *Northeast Texas Motor Lines v. Hodges*, 138 Tex. 280, 158 S.W.2d 487, 488 (1942). The fifth point of error is overruled.

■ Utilizing its sixth point-of-error statement that the trial court erred in the manner in which it submitted the charge to the jury, State Farm presents a great variety of alleged errors under nine divisions. Other than the recitation, in the first division, of one rule and one case authority, neither of which is keyed to a specific reversible error, State Farm makes its presentation without its argument being referenced to the record or the citation of any authority substantiating claimed error, thereby incurring the risk of waiving its sixth point. *Trenholm v. Ratcliff*, 646 S.W.2d 927, 934 (Tex.1983). However, since we are committed to a liberal con-

struction of points of error, we will address the contentions that are apparent from the argument under the divisions. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 633 (Tex. 1986).

To the extent that State Farm's appellate complaint comports to its trial court objection, we notice the complaint that questions 1 through 4, concerning breach of contract, were improperly submitted and should be disregarded because they were not supported by the pleadings. Tex.R.App.P. 52(a). To the contrary, by their second trial amendment, the Prices pleaded a breach of contract. Although State Farm represents it objected to the trial amendment, it not only fails to designate the place in the record where the objection can be found; but, more important, it does not attempt to explain why the pleading was insufficient to support the submissions, thereby waiving the complaint. *Hooks v. Texas Dept. of Water Resources*, 645 S.W.2d 874, 885 (Tex.App.—Austin 1983, writ ref'd n.r.e.).

■ The trial court submitted question 5, inquiring whether State Farm engaged in 18 acts or practices and, if so, whether it did so knowingly and its conduct was a producing cause of damages. State Farm objected that the question was duplicitous in that some of the inquiries duplicated other inquiries. On appeal, State Farm complains that the entire question was erroneously submitted, because certain of the inquiries, some of which were not objected to, were, among other things, duplicitous. Absent any enlightenment on why the inquiries were duplicitous, we do not pause to determine if they were; for, although duplicitous submission of the same fact issues should be avoided, such a submission does not require a reversal unless it amounted to such a denial of the rights of the appellant as was reasonably calculated to, and probably did, cause the rendition of an improper judgment. *Holmes v. J.C. Penney Company*, 382 S.W.2d 472, 473–74 (Tex.1964). Since State Farm does not suggest its alleged error had that result, the submission, if erroneous, would not require a reversal. *Id.* at 473.

■ State Farm also complains that the trial court failed to submit its requested and tendered instruction concerning mitigation of damages. Although stating that the issue was raised by its pleadings and the evidence, State Farm neglected to fulfill its obligation to set forth such evidence and the place(s) where it may be found in the record. Tex.R.App.P. 74(d), (f). The neglect prevents the complaint from being reviewed, *Isenhower v. Bell*, 365 S.W.2d 354, 358 (Tex.1963), particularly since it is not our responsibility to search the more than 900 pages of trial testimony in an attempt to discover such evidence. *Saldana v. Garcia*, 155 Tex. 242, 285 S.W.2d 197, 201 (1955).

■ Next, State Farm contends the court's award of treble damages was in error, because no causation issue related to damages awarded for alleged insurance code violations was submitted in the court's jury charge, which, State Farm further asserts, was also defective by the improper submission of the damage question as it related to allegations concerning the DTPA. However, State Farm did not object to the court's charge for either of these reasons, thereby waiving any complaint about the alleged defective submission of the issues. *Allen v. American National Insurance Company*, 380 S.W.2d 604, 609 (Tex.1964).

Additionally, State Farm advocates the award of treble damages was improperly based upon the jury's affirmative findings to questions 5(m) and 5(n)—*i.e.*, the inquiries whether State Farm denied the Prices' claim when there was not a reasonable basis for the denial, and State Farm knew, or should have known, there was not a reasonable basis for the denial—because no contentions were made in the Prices' pleadings that these allegations constitute violations of the Texas Insurance Code or its related regulations. The brief answer is that in making the advocation, State Farm obviously overlooked the pleading in paragraph X of the Prices' third amended petition. There, they pleaded that State Farm, among other things, breached its duty of good faith and fair dealing, the basis for

the submitted inquiries, *Arnold v. Nat. County Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex.1987), which "violated Article 21.21–2 of the Texas Insurance Code," and the violation "of Article 21.21–2 violates Insurance Board Order 41060 and therefore is a violation of Article 21.21, Section 16(a)."

Continuing with its sixth point, State Farm charges the trial court with error in submitting question 6, inquiring whether certain conduct by State Farm, asked about in question 5, was an unfair or deceptive practice, and in not disregarding the jury's affirmative answer, because no causation issue concerning damages was submitted. Inasmuch as State Farm did not object to the submission of question 6, it is in no position to fault the court for the submission. Tex.R.Civ.P. 274; *Allen v. American National Insurance Company*, 380 S.W.2d at 609. Nor may State Farm fault the court for not disregarding the jury's answer, for not only was an answer to question 6 conditioned upon the finding of a producing cause in response to question 5, but an insurer's unfair refusal to pay the insured's claim causes damages as a matter of law. *Vail v. Texas Farm Bureau Mut. Ins. Co.*, 754 S.W.2d 129, 136 (Tex.1988).

■ The jury's responses to questions 11A and 11B must be disregarded, State Farm submits without supporting authority, because they are in irreconcilable conflict with each other. Question 11A asked the amount of a reasonable fee for the Prices' attorneys in this case, stated as a percentage to the Prices' recovery, if any, and the jury answered, "40 percent." Question 11B asked the amount of a reasonable fee for the necessary services of the Prices' attorneys, stated as a total dollar amount, for the preparation and trial of the case, and for three phases of the appellate process, to which the jury answered, "$40,800.00, $7,500.00, $3,500.00, and $5,000.00," respectively. We perceive no conflict, particularly since the jury was instructed to answer without considering which, if either, sum would actually be awarded by the court. Reasonable attorney's fees may be evidenced by a dollar amount or by a percentage of the recovery. *Texas Farmers Ins. Co. v. Hernandez*, 649 S.W.2d 121, 124–25 (Tex.App.—Amarillo 1983, writ ref'd n.r.e.).

State Farm concludes its sixth-point presentation with the contention that the jury's responses to questions 8 and 9, which established that State Farm's breach of duty of good faith and fair dealing was a proximate cause of damages to the Prices, cannot support an award of treble damages. The Prices agree. However, State Farm tacitly admits that there is no articulation in the judgment that treble damages were based upon these responses by the jury and, at this point, State Farm does not dispute that treble damages may be awarded for a violation of the Insurance Code. *See Vail v. Texas Farm Bureau Mut. Ins. Co.*, 754 S.W.2d at 137. State Farm's sixth point of error is overruled.

■ With its seventh point, State Farm challenges the legal and factual sufficiency of the evidence to support the jury's responses to sub-parts k, l, m, n, and o of question 5 and to question 6, which were findings of State Farm's unfair or deceptive practices that were producing causes of damages, and to questions 8 and 9, which were findings that State Farm breached its duty of good faith and fair dealing, which was a proximate cause of damages to the Prices. In resolving State Farm's evidential challenges to the responses to questions on which the Prices had the burden of proof, we must follow certain familiar guidelines.

■ In determining whether the evidence is legally sufficient to support the responses, we must consider only the evidence and reasonable inferences which, when viewed in their most favorable light, support the findings, and disregard all evidence and inferences to the contrary of the fact finding. If there is more than a scintilla of evidence to support the findings, the challenge fails. *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex.1987). In resolving whether the evidence is factually sufficient to support the responses, we consider all the evidence that is in the record and relevant to the facts being challenged. We

may set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986).

As corroboration for its evidential challenges, State Farm selects the testimony of plumbers and engineers, together with photographs to evidence the damage to the Prices' foundation was not caused by a plumbing leak. Plumber Mike Keadle and plumbing company owner Danny Baca were hired by State Farm to conduct a pressure test on the water lines. The line held 80 pounds of pressure for 45 minutes, indicating to Keadle that there was no leak. Don Eudaly, State Farm's field claim representative, observed the test and, according to his testimony, Barry Acton, a plumber, and Lawrence Keaton and Burl Peterson, engineers, all of whom were engaged by the Prices, said that if the pressure held, it definitely proves there was not a leak under the slab foundation. Ken Bitting, an engineer hired by State Farm to perform an analysis of the Prices' home, examined the premises, reviewed photographs indicating the soil under the slab was comparatively dry, and tested the sewer line. He expressed the opinion that the problems at the Prices' residence were not caused by a leak in the water lines, but by the soil being improperly prepared for the construction, by the slab being too thin, and by the seasonal change in the moisture content in the soil.

State Farm submits that it relied upon this evidence, which clearly gave it a reasonable basis for denial of the Prices' claim, thereby showing that the jury's responses to questions 5k, 5l, 5m, 5n, 5o, 6, 8, and 9 are not supported by sufficient evidence. This results, State Farm argues with a citation of *St. Paul Guardian Ins. Co. v. Luker*, 801 S.W.2d 614, 621–22 (Tex. App.—Texarkana 1990, no writ), because Texas courts have recognized that a denial of an insurance claim may still be in good faith if the denial is based upon information available at the time of the denial.

However, the *Luker* court pointed out that when there is a bona fide controversy,

the jury determines the truthfulness of the witnesses. *Id.* at 622. Thus, it was for the jury, as the judge of the credibility of the witnesses and the weight to be given their testimony, *Benoit v. Wilson*, 150 Tex. 273, 239 S.W.2d 792, 796 (1951), to determine whether, as the Prices alleged, there was not a reasonable basis for the denial of their claim, and that State Farm knew or should have known there was no reasonable basis for denying the claim. *See Arnold v. Nat. County Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex.1987).

Before it arrived at its responses, the jury heard evidence at variance from that relied upon by State Farm. Keadle also affirmed that the first two times he conducted the pressure test, there was a leak each time. A hole was dug in the slab in the master bedroom to uncover a valve and, when Keadle returned the next morning, there was water in the hole. He replaced the valve, and then conducted the pressure test which indicated there was no leak.

Peterson, who had in the past rendered opinions to State Farm which, he said, relied on them, heard the conclusions of Bitting. He disagreed with those conclusions, particularly as they were drawn from what he considered an incorrect contour plat Bitting made as well as his measurements of settlement, and remained convinced that the Prices' home had experienced a water leak in the southwest portion of the residence. The leak, Peterson said, could have been from either a water or sewer line, which saturated the soil and accounted for his tested high moisture content and swelling on the west side of the residence and low moisture content on the east side. Peterson explained that if the settling was due to the normal moisture conditions testified to by Bitting, then the conditions would have had to act on the entire house.

It was Keaton's observation that the condition of the Prices' home was not due to normal settling. He drilled two holes through the concrete slab and found the soil was wet and muddy, more so than it should have been. Although he originally reported that the moisture source could

come from the air conditioner drain overflow and leaks from the hot water system, at the time of trial he was of the opinion that the leak found in the sewer line caused the problems at the Prices' home.

Baca's initial report to State Farm was that the damage was due to leaks under the house. Mrs. Price testified that when Eudaly was shown water leaking from the gasket on the sewer line into the hole dug in the slab, he said if it were his decision, he would pay the claim.

■ Given the state of the conflicting evidence, there was, obviously, some evidence of probative force supporting the jury's challenged responses. Considering all of the evidence, some of which supports the contrary positions of the Prices and State Farm, we are unable to say that the jury's responses are so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. We cannot set aside the jury's verdict merely because the jury could have drawn different conclusions from those it considered the most reasonable. *Benoit v. Wilson*, 239 S.W.2d at 797. State Farm's seventh point of error is overruled.

■ At the pretrial hearing on May 3, the court denied State Farm's motion to permit further testing of the Prices' premises for the reason that the request came too late. During the fourth day of trial, Peterson was recalled for rebuttal and, over State Farm's unsuccessful objection of no supplementation and undue surprise, was permitted to testify to grade measurements he had made that morning to refute the measurements Bitting had made in reaching his conclusions. With its eighth point, State Farm contends, without benefit of authority, that the court erred in allowing Peterson's testimony and in denying its motion to inspect the premises.

In pretrial discovery, Peterson was listed by State Farm as a professional engineer who may be called to testify as an expert, and he was designated by the Prices as a person who had knowledge of relevant facts of the subject matter of the lawsuit and whose report had been furnished State Farm. During his original examination,

Peterson disagreed with an engineering report upon which Bitting relied in reaching his conclusions, particularly the portion which discounted a water leak as the cause of the problems. His rebuttal testimony was that he made his measurements during trial because in the course of his previous visual inspections, he had "never shot any grades on the house," and he was asked to confirm Bitting's testimony of a seven and one-half inch settlement of the house. The only new testimony presented in rebuttal was the exact measurements he made during trial. Immediately afterward, Bitting testified in rebuttal, and stated that nothing he heard in rebuttal changed his opinion and conclusions that the loss to the Prices' home was totally the result of settlement.

The court's allowance of Peterson's rebuttal testimony comes within the rule that when a witness's knowledge of relevant facts is first established through matters discovered and then developed during trial, the failure to supplement answers to interrogatories is justified. And when there exists an expectation regarding certain testimony from a particular type of source, for which the other party had ample time to prepare, there is good cause to allow the testimony. *K–Mart Corp. v. Grebe*, 787 S.W.2d 122, 126 (Tex.App.—Corpus Christi 1990, writ denied). Although State Farm claimed undue surprise prior to Peterson's testimony, the omission of State Farm to move for a continuance or request a postponement mitigates against the court abusing its discretion in allowing the rebuttal testimony. *Smithson v. Cessna Aircraft Co.*, 665 S.W.2d 439, 442 (Tex.1984). The eighth point of error is overruled.

■ The gist of State Farm's ninth point is that the trial court erred in assessing treble damages against it because the procedure for assessing additional damages under article 21.21 of the Insurance Code is unconstitutional. This follows, State Farm proposes, because the Insurance Code provides for the mandatory imposition of treble damages against insurance companies for acts committed knowingly, whereas the DTPA provides for a different, discretion-

ary imposition of treble damages against any other defendant for the same type of conduct. The differentiation in treatment of insurance companies in comparison to other defendants is, in State Farm's view, a violation of the Due Process and Equal Protection clauses of the Texas and United States Constitutions, which insure that all persons similarly circumstanced shall be treated alike. We do not share State Farm's viewpoint.

■ The DTPA and the Insurance Code were enacted in 1973 as part of the reform package of consumer legislation. The DTPA is not a codification of the common law; rather, it has a primary purpose of providing consumers a cause of action for deceptive trade practices without the burden of proof and numerous defenses encountered in a common law fraud or breach of warranty suit. *Smith v. Baldwin,* 611 S.W.2d 611, 616 (Tex.1980). Similarly, the Insurance Code, with its specified purpose of regulating trade practices in the business of insurance, provides relief for unfair or deceptive acts and practices in the business of insurance. *Vail v. Texas Farm Bureau Mut. Ins. Co.,* 754 S.W.2d at 132. Originally, both enactments, which confer a statutory remedy, mandated treble damages for described deceptive acts; however, subsequent amendments resulted in discretionary treble damages under the DTPA vis-a-vis mandatory treble damages under the Insurance Code, which gives rise to State Farm's point of error.

Specifically, at the time material to this litigation, section 17.50(b)(1) of the DTPA provided that the prevailing consumer may obtain "the amount of actual damages" and, "[i]f the trier of fact finds the conduct of the defendant was committed knowingly, the trier of fact *may* award not more than three times the amount of actual damages in excess of $1,000." (Emphasis supplied.) Section 16(b)(1) of the Insurance Code's article 21.21 provided that the prevailing plaintiff may obtain "the amount of actual damages" and, "[i]f the trier of fact finds that the defendant knowingly committed the acts complained of, the court *shall* award, in addition, two times the

amount of actual damages." (Emphasis supplied.) By its terms, the DTPA incorporates article 21.21 in its entirety, *Vail v. Texas Farm Bureau Mut. Ins. Co.,* 754 S.W.2d at 132, thereby including the article's mandatory treble damage provision despite the discretionary treble damage language in the DTPA's section 17.50(b)(1).

To succeed upon its claim of unconstitutionality, State Farm must overcome the historical presumption of the validity of the statutes. In this regard, the question whether the constitutional provisions of due process and equal protection are offended by the operation of the statutes depends upon the subject on which each operates and the character of rights which each affects. The constitutional guarantees do not forbid the state from adjusting its legislation to differences in situations. Equal protection of law is secured if the challenged statute does not subject one affected by it to arbitrary exercise of the powers of government. Thus, legislation is not open to objection if all who are brought under its influence are treated alike in the same circumstances. The Legislature must have, and clearly does have, authority to classify subjects of legislation, and when the classification is reasonable, *i.e.,* based upon some real difference existing in the subject of the enactment, and the law applies uniformly to those who are within the particular class, the statute is not open to constitutional objection. *Mumme v. Marrs,* 120 Tex. 383, 40 S.W.2d 31, 36 (1931).

■ The underlying purposes of the DTPA are to protect consumers against false, misleading and deceptive business practices, and to provide efficient and economical procedures to secure such protection. *Pennington v. Singleton,* 606 S.W.2d 682, 686 (Tex.1980). The purposes are furthered by the provision for treble damages, by which the prevailing consumer's recovery is increased in a fixed proportion to his actual loss so as to encourage private consumer litigation and reduce the need for public enforcement, and to deter violations of the act. In this sense, the treble damage provision does not violate due process. *Id.* at 690–91.

The expressed purpose of the Insurance Code is to "regulate trade practices in the business of insurance" and prohibit unfair or deceptive acts or trade practices. Tex.Ins.Code Ann. art. 21.21 § 1(a) (Vernon Supp.1993). The statute applies to any individual and legal entity engaged in the business of insurance, *id.*, § 2(a), and, therefore, it applies equally to all so engaged. The statute is legitimate and, to further its purpose, it provides that any individual or legal entity knowingly committing a prohibited act or practice shall be subject to treble the amount of actual damages. *Id.*, § 16(b)(1). In providing for treble damages for knowing conduct, the Legislature obviously considered the offender's culpability as important, and proportioned damages in relation to the plaintiff's actual loss to deter the knowing commission of the prohibited acts or practices. The damage provision rationally relates to the interest of the state as stated in the purpose of the statute, and its enactment was within the discretion of the Legislature, since it did not violate the constitutional inhibition of being so severe and oppressive as to be wholly disproportioned to the prohibited acts or practices and unreasonable. *See Pennington v. Singleton,* 606 S.W.2d at 690.

In enacting the DTPA and the Insurance Code, the Legislature addressed different subjects. All those within the class regulated by the DTPA are treated alike in the same circumstances; all those within the class subject to the Insurance Code are treated uniformly in the same circumstances. Thus, the fact that State Farm's knowing violation of the Insurance Code subjected it to mandatory treble damages is no basis for saying the Code's damage provision is a violation of due process and equal protection since the DTPA violators are exposed only to discretionary treble damages. State Farm's ninth point of error is overruled.

The judgment is affirmed.